LUIS M. ORTIZ, demandante y apelado, *v.* JUAN G. PALMER y PEDRO MELÉNDEZ SANTIAGO, SECRETARIO AUDITOR y TESORERO DIRECTOR ESCOLAR, respectivamente, del Municipio de Santa Isabel, demandados y apelantes. JORGE FINLAY, ha-

ciendo negocios con el nombre comercial de Santa Isabel Drug Co., demandante y apelado, *v.* Los Mismos, demandados y apelantes.

Núms. 8335 y 8336.—*Sometidos:* Enero 22, 1943. *Resueltos:* Marzo 31, 1943.

*Felipe Colón Díaz,* abogados de los apelantes; *Rafael Hernández Matos,* abogado de los apelados.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

La Asamblea Municipal de Santa Isabel, en sesión extraordinaria celebrada el 24 de enero de 1938, pasó la ordenanza número 42 que fué aprobada por el Alcalde al día siguiente, en la que se consignaron las siguientes circunstancias:

*a*. Que existía entonces en dicho municipio una epidemia de malaria, conforme lo notificó al Alcalde el Dr. Abel de Juan, N.C.C.P.R., Jefe del Negociado de Epidemiología y Estadística Demográfica por comunicación del 22 de enero de 1938;

*b*. Que la epidemia era de tal naturaleza que se había hecho necesario agotar totalmente los créditos existentes en el presupuesto de 1937–38 en las partidas del Departamento de Beneficencia, a saber: compra de medicinas, alimentos para enfermos, materiales de curaciones y compra de ataúdes para pobres insolventes;

*c*. Que no era posible hacer transferencias de otras partidas por estar casi agotadas unas y ser de suma utilidad pública las otras;

*d*. Que los recursos con que contaría el municipio para la formulación del presupuesto de 1938–39 serían suficientes para cubrir sus necesidades normales, así como la deuda que en dicha ordenanza se autorizaba;

*e*. Que existían varias firmas comerciales dedicadas a la venta de medicinas, alimentos, material de curaciones y ataúdes que estaban dispuestas a suministrar a crédito, a un año plazo, cualquier cantidad que el municipio necesitase;

*f*. Que era deber de la Asamblea Municipal resolver dentro de las disposiciones legales, de manera justa y efectiva, el estado de emergencia existente en el municipio; y

*g*. Que el pagaré o pagarés que se emitieran como evidencia de esta deuda llevarían las firmas del Alcalde y el Secretario Auditor de Santa Isabel.

A virtud de los antecedentes expuestos, se autorizó al Alcalde para que incurriera en una deuda por la suma de $3,000, o la parte de la misma que fuera necesaria para las atenciones antes indicadas desde la aprobación de la ordenanza hasta el 30 de junio de 1938, sin que dicha deuda devengase intereses.

Se dispuso además que la referida cantidad de $3,000 autorizada por la indicada ordenanza se consignaría debidamente en el presupuesto ordinario correspondiente al año económico 1938-39 bajo el capítulo "Otras Deudas" de manera que durante dicho año económico se satisficiera totalmente la deuda.

Por la sección 4 se dispuso que por existir un estado de emergencia dicha ordenanza sería efectiva tan pronto fuera aprobada por el Alcalde y por el Consejo Ejecutivo de Puerto Rico.

La citada ordenanza fué aprobada por el Consejo Ejecutivo el 5 de abril de 1938 bajo las siguientes condiciones: (1) que los pagarés que se expidiesen a virtud de las disposiciones de la ordenanza no devengarían interés, y (2) que todas las compras fueran hechas mediante subasta pública de conformidad con las disposiciones del inciso 1 de la sección 8 y de la 38 de la vigente Ley Municipal.

A virtud de la citada ordenanza Jorge Finlay, haciendo negocios con el nombre de "Santa Isabel Drug Company", en fechas comprendidas entre el 14 de abril y el 13 de junio de 1938, de acuerdo con las órdenes expedidas por el funcionario correspondiente despachó medicinas, recetas, materiales de curación y otros efectos farmacéuticos para el indicado municipio, por la suma total de $729, pero el valor de las compras en una sola ocasión no alcanzó a la suma de $600.

También desde el mes de febrero de 1938 hasta junio del mismo año, Luis M. Ortiz suministró provisiones para el Hospital Municipal en cantidad total de $741.57, representando las siguientes cantidades el valor de lo suministrado en cada uno de los meses expresados a continuación: febrero, $154.39; marzo, $170.46; abril, $166.52; mayo, $125.74; y junio, $124.46.

Como para el 24 de junio de 1939 el municipio adeudaba a Jorge Finlay la cantidad de $729.09, y a Luis M. Ortiz

$141.57, por los conceptos indicados, cada uno de ellos presentó en la corte *a quo* una petición de *mandamus* contra Juan Palmer y Pedro Meléndez Santiago, Secretario Auditor y Tesorero Director Escolar del Municipio de Santa Isabel respectivamente, solicitando que se les ordenase extender a los demandantes los correspondientes cheques en pago total de sus respectivas acreencias. Alegaron los peticionarios en adición a los hechos expuestos, que el Municipio de Santa Isabel desde enero de 1938 y al radicarse las peticiones de mandamus tenía fondos en cantidad suficiente para pagar totalmente los créditos de los peticionarios; que todos los documentos y comprobantes necesarios fueron presentados y archivados en la oficina del Auditor Municipal; que todas las gestiones de cobro verificadas por los peticionarios resultaron inútiles a pesar de haberse hecho asignaciones especiales para tales obligaciones, y que los peticionarios carecían de un remedio rápido y eficaz en el curso ordinario de la ley para obligar a los demandados a verificar el pago de dichas deudas.

En su contestación los demandados aceptaron la certeza de las cantidades reclamadas, y contestando al demandante Finlay alegaron que el valor total de las recetas por él despachadas desde febrero de 1938 a junio siguiente ascendió a $706.75 y el valor de los materiales de curación suministrados por él al hospital montó a $1,222.34, y que toda vez que de acuerdo con las condiciones impuestas por el Consejo Ejecutivo al aprobar la citada ordenanza, las compras deberían hacerse mediante pública subasta de conformidad con las secciones 8, inciso 1, y 38 de la Ley Municipal, todo lo vendido en exceso de $600 había sido en violación de los poderes conferidos por la ley a los funcionarios de dicho municipio. Alegaron como defensa especial que el recurso de mandamus no procedía en dichos casos por tener los peticionarios otro remedio adecuado en ley, cual es la acción de cobro de dinero.

La corte inferior expidió finalmente un auto de mandamus perentorio en cada caso y contra dichas sentencias interpusieron los demandados estos dos recursos, que por envolver las mismas cuestiones hemos consolidado a los efectos de esta opinión.

■ Como el artículo 8 de la Ley Municipal dispone que toda obra pública se verificará, y todos los efectos y materiales se adquirirán por los municipios mediante subasta cuando su valor o costo exceda de $1,000 en los municipios de primera clase, de $600 en los de segunda y de $300 en los de tercera, estando el de Santa Isabel comprendido entre los de segunda clase, el juez inferior basó su sentencia en el hecho de que como ninguna de las distintas órdenes servidas por los demandantes, tomada separadamente, alcanzaba a la cantidad de $600, no era de aplicación el requisito de la subasta pública.

El razonamiento de la corte inferior es erróneo, a nuestro juicio. Pero ello no implica necesariamente que sus sentencias también lo sean. Está bien establecido tanto en el Derecho Civil como en la Ley Común el principio legal de que no puede hacerse indirectamente lo que la ley prohibe que se haga de un modo directo. A nuestro juicio el propósito del legislador es que se sume el valor de todas las mercaderías compradas a una persona o firma durante el año económico. Cualquier otra interpretación convertiría en letra muerta el precepto legal contenido en la sección 8, que en lo pertinente dice así:

"Las facultades conferidas por esta Ley a los municipios las ejercitarán con sujeción a las siguientes limitaciones especiales: (1) toda obra pública se verificará y todos los efectos y materiales se adquirirán mediante subasta cuando su valor o costo exceda de mil (1,000) dólares en los municipios de primera clase; seiscientos (600) dólares en los de segunda clase; y trescientos (300) dólares en los de tercera clase; y cuando ocurriese una emergencia y el trabajo fuese de tal naturaleza que no se pudiese esperar el trámite de una subasta, podrá el Alcalde citar a la Asamblea Municipal en sesión

extraordinaria para este objeto y dicha Asamblea tendrá la facultad de declarar la urgencia de la obra, o necesidad de los materiales, y ordenar que se haga por administración.''

La sección antes transcrita contiene, como hemos visto, una excepción al requisito de la subasta, aun cuando el importe de las compras de materiales o el valor de la obra pública exceda de los límites fijados en dicha sección. Esa excepción se aplica cuando existe una emergencia, la cual presume que el trabajo a realizarse o la adquisición de los servicios es tan urgente que no permite la dilación que significaría la tramitación de la subasta. Para esos casos se prescribe en la citada sección que el alcalde citará a sesión extraordinaria a la asamblea municipal y se confiere facultad a ésta para declarar la existencia de la emergencia y la urgencia de la obra o necesidad de los materiales o servicios, pudiendo en tal caso ordenar que se haga por administración o se adquieran sin el requisito de la subasta, sin tener en cuenta si el valor de los materiales o servicios excede de los límites fijados en la sección 8, supra.

Interpretando un estatuto similar al nuestro, la Corte Suprema de California, en el caso de *Los Angeles Dredging Co.* v. *Long Beach* (1930) 71 A.L.R. 161, 168, cita con aprobación la siguiente doctrina de la Corte de Apelaciones de Nueva York, expuesta en el caso de *Harlem Gaslight Co.* v. *Mayor, etc. of New York*, 33 N.Y. 309, 329:

"Las ofertas competitivas o las subastas no tienen otro objeto que asegurar la economía y excluir el favoritismo y la corrupción en el suministro de labor, servicios, propiedad y materiales para los usos de la ciudad. Éste fué el propósito, y el único propósito, de los redactores de los estatutos. ... . No debe dárseles una interpretación que destruya su propósito, impida el progreso usual y regular de los negocios públicos, o prive a los habitantes, aunque sea temporalmente, de aquellas cosas necesarias e indispensables para su subsistencia, su salud o la seguridad y protección de sus personas o propiedad. Pueden surgir emergencias en que los servicios, materiales y propiedad de un valor superior al prescrito puedan nece-

sitarse inmediatamente y en que las ofertas competitivas y contratos escritos sean imposibles o inefectivos. En tal caso los estatutos no se aplican, porque no pudo ser ésa la intención legislativa.''

La facultad de declarar la existencia de la emergencia fué concedida exclusivamente a la Asamblea Municipal. Hecha la declaración, la emergencia se presume y al que niegue su existencia incumbirá el peso de la prueba. Véanse *Los Angeles Dredging Co.* v. *Long Beach,* supra, pág. 171, y la monografía sobre la materia que aparece en 71 A.L.R. 173-9.

No podrá argüirse que los peticionarios no tienen derecho a cobrar sus créditos por el hecho de no haberse cumplido con la condición impuesta por el Consejo Ejecutivo al efecto de que las compras se hiciesen mediante pública subasta, pues el Consejo Ejecutivo carecía de facultad para imponer tal condición, ya que esa facultad no le había sido concedida y de ejercitarla privaría a la Asamblea de un poder expresamente concedídole por la ley. Es verdad que la ordenanza estaba sujeta a la aprobación del Consejo Ejecutivo, pero la misión de este último estaba limitada a determinar si el préstamo estaba comprendido dentro del límite constitucional para que el municipio pudiese contratarlo, así como la conveniencia de contraerlo y la forma y condiciones del pago. Véase a ese efecto el artículo 48 de la Ley Municipal. Es evidente que si el municipio hubiese tenido fondos disponibles para atender a la emergencia, una vez declarada la existencia de ésta por la Asamblea, hubiese podido comprar dichas mercaderías de contado, aunque su valor excediese de $600. En tal caso no hubiera sido necesario someter la ordenanza a la aprobación del Consejo Ejecutivo.

En el presente caso los demandados no han negado la existencia de la emergencia, y no pueden, por tanto, impugnar la deuda por el mero hecho de haberse prescindido de la subasta.

 No tienen razón los apelantes al alegar que el remedio de mandamus no es el procedente. La Ley Municipal, en su sección 83, dispone que las cortes de distrito tendrán jurisdicción, a instancia de parte perjudicada, para compeler mediante auto de mandamus al cumplimiento de deberes ministeriales por los funcionarios municipales. Como el deber impuesto a los demandados de pagar los créditos reclamados por los demandantes es un deber ministerial, es evidente que el recurso de mandamus procede de acuerdo con la citada sección.

*Por todo lo expuesto, procede en estos casos desestimar los recursos y confirmar las sentencias apeladas.*