ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| AYSON SOTO GONZÁLEZ<br><br>APELANTE<br><br>V.<br><br>FMC AGRIGULTURAL CARIBE INDUSTRIES, LTD<br><br>APELADOS | KLAN202301032 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de Arecibo<br><br>Caso Núm. AR2021CV01652<br><br>Sala: 404<br><br>Sobre:<br><br>Procedimiento Sumario (Ley Núm. 2-1961) Despido Injustificado (Ley Núm. 80-1976) Represalias Contra el Empleado (Ley Núm. 115-1991) |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Brignoni Mártir, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de enero de 2024.

El señor Ayson Soto González (en adelante, el señor Soto González o el apelante) comparece ante nos mediante un recurso de *Apelación Civil*. En dicho escrito, solicita la revocación de una *Sentencia* emitida el 7 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI). Mediante la referida determinación, el foro primario declaró *Ha Lugar* una *Solicitud de Sentencia Sumaria* presentada por FMC Agriculture Caribe Industries, LTD (en adelante, FMC). En consecuencia, desestimó la reclamación por despido injustificado presentada por el apelante.

Por los fundamentos expuestos a continuación, *confirmamos* el dictamen apelado.

**I.**

El 16 de noviembre de 2021, el señor Soto González presentó una *Querella* al amparo de la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 octubre de 1964, 32 LPRA sec. 3118, según

enmendada.[1] En esencia, alegó que su patrono decretó su despido sin que mediara justa causa en contravención a la Ley sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a, según enmendada, y en violación de la Ley Contra el Despido Injusto o Represalias a Todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, 29 LPRA sec. 194, según enmendada.

En particular, el apelante adujo que un oficial de seguridad lo grabó mediante video a través del sistema de cámaras de FMC. En consecuencia, expuso que comunicó su queja al jefe de seguridad de la empresa querellada.   No obstante, aseveró que posteriormente recibió una notificación de suspensión del empleo durante cinco (5) días. Puntualizó que luego intentó contactar a su patrono para preguntar la fecha de su regreso, sin embargo, no recibió respuesta. Finalmente, arguyó que la señora Viviana Pagán Miranda, Gerente de Recursos Humanos, le remitió una carta de despido fechada el 23 de julio de 2021.[2] Por lo anterior, solicitó la compensación en conceptos de daños por angustias mentales, la restitución a su empleo y una cantidad correspondiente al salario dejado de devengar.

El 3 de diciembre de 2021, FMC sometió su *Contestación a Querella*.[3] En ésta, puntualizó que el querellante fue despedido por incurrir en un patrón de conducta impropia en violación a las políticas de hostigamiento sexual de la empresa. En cuanto a las grabaciones, advirtió que las cámaras de seguridad suelen realizar rondas automáticas de monitoreo, por lo que, en algunas ocasiones los oficiales pueden tomar control de un área que identifican como actividad inusual. Por tanto, señaló que la destitución del empleado no fue objeto de represalia.

Luego de una serie de incidencias procesales, el 13 de diciembre de 2021, FMC presentó una *Moción de Conversión de los Procedimientos para*

---

[1] Apéndice del Apelante, págs. 1-4
[2] Apéndice del Apelante, pág. 228.
[3] Apéndice del Apelante, págs. 8-3.

*que el Caso se Ventile Bajo el Procedimiento Ordinario.[4]* Argumentó que procedía un descubrimiento de prueba amplio para atender las alegaciones de represalia y de los presuntos daños sufridos. Por su parte, el apelante sometió una *Moción en Cumplimiento de Orden y en Oposición a Solicitud de Conversión de Trámite a uno Ordinario.[5]* Razonó que la reclamación instada no ameritaba un descubrimiento de amplio y sin limitaciones. Sostuvo que la información y documentación pertinente se encontraba bajo la custodia del patrono querellado. Por ende, adujo que no procedía la atención del pleito por la vía del procedimiento ordinario. Evaluados los argumentos esbozados, el 24 de enero de 2022, el TPI emitió *Resolución* declarando *No Ha Lugar* a la aludida petición.[6]

Así las cosas, el 17 de abril de 2023, FMC presentó una *Solicitud de Sentencia Sumaria* acompañada de dos declaraciones juradas y una serie de documentos evidenciarios.[7] En dicha solicitud, la empresa apelada alegó que despidió al apelante por incurrir en conducta constitutiva de hostigamiento sexual hacia una compañera de trabajo. En vista de lo anterior, solicitó la desestimación de la reclamación instada en su contra.

El 10 de mayo de 2023, el señor Soto González sometió su *Oposición a la Solicitud de Sentencia Sumaria Presentada por la Querellada y Solicitud de Sentencia Sumaria* acompañada de una *Declaración Jurada.[8]* Argumentó que no se encuentran en controversia los comentarios desplegados por su parte. Adujo que las expresiones imputadas eran parte de la dinámica del grupo laboral al cual pertenecía. A su vez, señaló que la investigación de FMC resultó incompleta y parcializada. Reiteró que el patrono incurrió en un despido injustificado. Por lo anterior, peticionó que el tribunal declarara *No Ha Lugar* la moción sumaria aludida. En cambio, solicitó que declarara *Con Lugar* la demanda presentada mediante el procedimiento sumario.

---

[4] Apéndice del Apelante, págs. 24-29.
[5] Apéndice del Apelante, págs. 32-35.
[6] Apéndice del Apelante, págs. 36-45.
[7] Apéndice del Apelante, págs. 93-314.
[8] Apéndice del Apelante, págs. 316-357.

El 8 de agosto de 2023, FMC presentó una *Réplica a Oposición a Solicitud de Sentencia Sumaria* acompañada de una *Declaración Jurada*.[9] Sostuvo nuevamente que las actuaciones del querellante constituyeron (1) violaciones serias a las políticas de la empresa, (2) atentaron contra la dignidad y (3) crearon un ambiente laboral incómodo. Argumentó, además, que los comentarios del querellante colocaron en riesgo el orden y la eficiencia en el lugar de trabajo. Así expuesto, solicitó que se dictara sentencia sumaria desestimando con perjuicio la querella presentada por el apelante.

En respuesta, el apelante presentó un escrito intitulado *Dúplica Réplica Oposición a Solicitud de Sentencia Sumaria*.[10] Argumentó que luego de presentar su oposición a la solicitud de sentencia sumaria, FMC sometió una declaración jurada con información adicional relacionada con los reglamentos de la empresa. Adujo que dicha actuación es contraria a derecho de conformidad a la doctrina de *sham affidavit*. En efecto, reiteró que no procedía la concesión de la vía sumaria. Evaluados los argumentos aludidos, el 7 de noviembre de 2023, el foro primario emitió *Sentencia* declarando *Ha Lugar* la desestimación solicitada.[11] Al respecto, dispuso los siguientes hechos que no están en controversia:

1. El querellante comenzó a trabajar para FMC, en aquel entonces DuPont, el 25 de junio del 2001 como empleado a tiempo completo.

2. El querellante fue despedido el 23 de julio del 2021.

3. El último puesto que ocupó el querellante en FMC fue el de Manufacturing Specialist, o especialista en manufactura.

4. Al momento de su despido, el querellante trabajaba turnos rotativos.

5. FMC lleva a cabo operaciones altamente reguladas por distintas agencias.

6. Al momento del despido del querellante, su supervisor directo era Elvis Menéndez.

7. El querellante no recuerda si FMC tiene políticas que regulen la conducta de los empleados ni que prohíbe el hostigamiento laboral y el hostigamiento sexual.

---

[9] Apéndice del Apelante, págs. 358-379.
[10] Apéndice de Apelante, págs. 380-406.
[11] Apéndice de Apelante, págs. 408-422.

**8. FMC tiene un *Ethics Code* que dispone que "Sexual harassment of any type is prohibited. Any use of racial epithets, ethnic or sexist slurs or any other pejorative language or behavior that is meant, by its nature or implication, to denigrate, insult or show contempt or hatred for an individual or group because of his/her/their or its diversity dimension, is unacceptable and will not be tolerated."**

**9. Las Reglas de Conducta de FMC establecen que el acoso u hostigamiento físico, mental o sexual a o de compañeros de trabajo queda estrictamente prohibido y que cada caso reportado será investigado para determinar las acciones a tomar.**

**10. El Código de Ética y las Reglas de Conducta disponen que el acoso u hostigamiento físico, mental o sexual a o de compañeros de trabajo queda estrictamente prohibido y que cada caso reportado sobre dicha conducta será investigado para determinar acciones a tomar.**

**11. El Código de Ética dispone que todo empleado está obligado a cooperar con cualquier investigación interna que surja a raíz de posibles violaciones a dicho Código.**

12. FMC adquirió las operaciones de DuPont Agricultural Caribe Industries, Ltd. en la planta de Manatí, sin interrupción o cese en las operaciones, continuó empleando sustancialmente la misma fuerza laboral y adoptó las políticas y reglas de conducta de DuPont aplicables a la fecha, haciéndolas suyas. Dichas políticas se refieren a DuPont y a FMC porque para propósitos de las operaciones locales, se refieren a lo mismo.

**13. Las Reglas de Conducta requiere que todos los empleados se conduzcan de una manera civilizada en los terrenos de la Planta, prohíben el uso de lenguaje profano, abusivo o amenazante y establecen que cualquier empleado que viole alguna de dichas reglas estará sujeto a acciones disciplinarias que pueden incluir el despido.**

**14. Todos los empleados de FMC tienen el deber de familiarizarse y respetar las disposiciones del Código de Conducta.**

**15. Durante su empleo con FMC, el señor Soto recibió y tuvo acceso a varias versiones del Código de Ética y las Reglas de Conducta. También recibió múltiples adiestramientos de parte de la empresa en cuanto a dichas políticas.**

**16. El querellante tuvo acceso a una copia digital del *Ethics Code*.**

**17. El querellante acusó recibo de las Reglas de Conducta de FMC, que aún contienen en su membrete el logo de DuPont.**

**18. El querellante reconoció que el hostigamiento sexual es conducta que no debe ocurrir en el empleo**.

19. Armando Méndez ("Méndez") se desempeña como Operations Manager de FMC y en esa capacidad está autorizado a atender cualquier queja interna de los empleados del área de operaciones de FMC.

20. Parte de las funciones de Méndez incluyen manejar quejas que surjan relacionadas a los empleados que se reportan al área de operaciones.

21. Para el año 2021, el señor Soto era un empleado que se reportaba al área de operaciones como *Manufacturing Specialist*.

22. El 8 de julio del 2021, el empleado Juan Rosa, Manufacturing Specialist, se le acercó a Méndez para quejarse de conducta altamente impropia del señor Soto, incluyendo conducta constitutiva de hostigamiento sexual en el empleo en contra de la empleada Sonia Rivera.

**23. Inmediatamente luego de que Méndez recibiera dicha queja, éste comenzó una investigación en torno a la conducta imputada en colaboración con la señora Viviana Pagán ("Pagán"), Gerente de Recursos Humanos.**

**24. Méndez entrevistó a Juan Rosa, Sonia Rivera y Wilfredo Medina.**

25. El grupo de trabajo de Soto, está compuesto por Sonia Rivera, Erick Tejada, Carlos Ortiz, Jorge Galinde, Wilfredo Medina y el Supervisor Roberto Elvis Menéndez.

**26. Juan Rosa indicó durante la investigación que el señor Soto utiliza palabras soeces en el lugar de empleo como "me cago en la ostia" y dio un palmetazo en la mesa en el área del break room. Dijo que el señor Soto actuaba de forma errática y con conducta alterada en el trabajo, y un empleado había expresado que temía que algo le sucediera a Sonia Rivera porque el señor Soto no sabía medir sus palabras ni sus actuaciones**.

**27. Durante la investigación, Juan Rosa indicó que el señor Soto dio un palmetazo en la puerta del área del "break room".**

28. Juan Rosa, no pertenece al grupo de trabajo de Soto y de Sonia Rivera, pero ambos coincidían en horarios y turnos y los grupos de trabajo trabajan en proximidad física y coincidían en las áreas comunes de la planta.

29. El 12 de julio del 2021, Armando Méndez entrevistó a Sonia Rivera.

**30. Sonia Rivera indicó durante la primera entrevista de la investigación que el señor Soto le dijo "es que tú no has estado con hombres como yo", a lo que Rivera le contestó "yo no he estado con hombres como tú, porque yo me doy a respeta**r.

31. El 16 de julio del 2021, Viviana Pagán y Armando Méndez entrevistaron por una segunda ocasión a Sonia Rivera.

**32. Durante la segunda entrevista de la investigación, Rivera detalló que recibió comentarios no deseados de índole sexual por parte del señor Soto que le hicieron sentir incómoda y creaban un ambiente laboral incómodo dentro de FMC.**

**33. Durante la investigación, Rivera expresó, además, que los comentarios llevaban ocurriendo por un año previo a la entrevista del 16 de julio del 2021 y que ella frenaba los comentarios pro que el señor Soto continuaba haciéndolos, con una frecuencia que ella estimaba era semanal.**

34. Durante la investigación, Sonia Rivera expresó que se sentía incómoda, además, porque está casada con el Sr. José Torres, quien es empleado de FMC, y temía que éste se enterara del comportamiento del señor Soto.

**35. Durante la investigación, Sonia Rivera indicó que los comentarios del señor Soto, que hacía frente a otros empleados, creaban un ambiente incómodo dentro de la organización.**

**36. Durante la investigación, Sonia Rivera describió la personalidad del señor Soto como "el tipo de persona que sigue insistiendo cuando quiere lograr algo, hasta poder alcanzarlo… y como no ha podido lograr lo que quiere con ella, sigue insistiendo, realizando los comentarios de carácter sexual".**

**37.Durante la investigación, Sonia Rivera detalló que el señor Soto le ha hecho otros comentarios como "yo no me voy a morir sin tener algún día algo contigo" y que en el área del ponchador le ha dicho "Mira como está esta 'viejita' todavía, no le duele nada".**

**38. El señor Soto fue suspendido de empleo y sueldo en lo que FMC llevaba a cabo el proceso investigativo de la queja interna de hostigamiento sexual.**

**39.Durante el proceso de investigación FMC, a través de Méndez y Pagán, intentó comunicarse con el señor Soto para entrevistarle como parte de la referida investigación, pero nunca lograron tener comunicación con éste.**

**40. La investigación llevada a cabo por FMC confirmó que el señor Soto incurrió en conducta constitutiva de hostigamiento sexual en violación a la política de cero tolerancia de FMC. Entre otros concluyó que en múltiples ocasiones el señor Soto había realizado comentarios hostigantes y de índole sexual a Sonia Rivera, que ésta le había expresado al señor Soto que dichos comentarios no eran bienvenidos ni consentidos y que la hacían sentir incómoda y que, no obstante ello, el señor Soto continuó un patrón de comentarios inapropiados de índole sexual. Dicha investigación también reveló que el señor Soto había creado un ambiente hostil de trabajo, lo que incluyó el uso de palabras soeces y el haber incurrido en conducta errática y alterada en el lugar de empleo.**

41. Completada la investigación interna, FMC concluyó que el comportamiento reiterado y altamente impropio del señor

Soto violaba los preceptos, valores, cultura y políticas de FMC, particularmente al Código de Ética y su política de cero tolerancia al hostigamiento sexual.

**42. La investigación concluyó que Soto creó un ambiente de trabajo hostil, hizo comentarios impropios, sexistas y ofensivos hacia Rivera. Además, que utilizó lenguaje grosero y sexualmente sugestivo frente a varios empleados, creando así un ambiente hostil de empleo.**

**43. A raíz de las conclusiones de la investigación, el señor Soto fue despedido.**

44. La decisión de despedir al señor Soto fue tomada por Pagán, en conjunto con Méndez y en consulta con el Departamento Legal de FMC.

45. El 21 de julio del 2021, FMC, a través de Méndez y Pagán, intentaron en múltiples ocasiones de comunicarse con el señor Soto mediante llamada telefónica para notificarle los resultados de la investigación.

46. Durante su deposición, el querellante negó haber hecho comentarios de índole sexual a compañeros en el trabajo.

47. El 23 de julio del 2021 se le notificó su terminación mediante carta escrita.

48. Como parte de sus medidas de seguridad, FMC tiene cámaras de seguridad en el exterior de la planta localizada en Manatí.

49. El monitoreo y acceso a dichas cámaras de seguridad corresponde a la Compañía Allied Universal, la cual es subcontratada para esos fines. Los oficiales de seguridad que monitorean la entrada y salida de empleados y tienen acceso a dichas cámaras no son empleados de FMC, sino de Allied Universal.

50. El 22 de junio del 2021, el señor Soto le comunicó a Elvis Menéndez y Manuel Laureano ("Laureano"), entonces Security & ERT Leader o Jefe de Seguridad de la planta de Manatí de FMC, que quería hablar con éstos pues alegadamente el oficial de seguridad José Maisonet ("Oficial Maisonet") lo estaba vigilando con la cámara. El señor Soto pidió una reunión con Laureano y el Oficial Maisonet para aclarar esta situación.

51. El querellante dijo que se enteró que le "seguían" con las cámaras de seguridad por un comentario que le hizo el entonces oficial de seguridad, Josúe Rodríguez.

52. FMC llevó a cabo una investigación en cuanto a las alegaciones del señor Soto.

53. Como parte de dicha investigación, el 23 de junio del 2021, Méndez entrevistó al señor Soto y a Sonia Rivera.

54. Según el querellante, el último incidente del Oficial Maisonet vigilándolo con las cámaras de seguridad ocurrió el 16 o 17 de junio del 2021. Según el señor Soto, en esos días

el querellante estuvo en el estacionamiento de la planta con la compañera de trabajo Liriam Carrucini.

55. Para eso del 16 y 17 de junio de 2021 el querellante se encontraba en el turno de 10:00 PM a 6:30 AM.

56. El 30 de junio del 2021, la Compañía Allied Universal, a través de Charleen Cardona y José Santiago, visitaron la planta de FMC para obtener más información sobre las alegaciones del señor Soto.

57. Como parte de la investigación que se llevó a cabo, el Oficial Maisonet detalló que el 2 de abril del 2021, en horas de la madrugada, observó que el querellante se acercaba al portón de salida de la planta de FMC y de pronto apagó las luces de su auto y, acto seguido, dio un viraje y regresó al área de estacionamiento.

58. El Oficial Maisonet dirigió las cámaras hacia el vehículo y observó que el querellante se estacionó al lado de un vehículo que acababa de entrar a al estacionamiento de la planta, apercibió cuando el querellante se bajó de su vehículo y se montó en el vehículo que estaba al lado, el cual estaba ocupado por una fémina y que ambos permanecieron dentro de vehículo por unos treinta (30) minutos hasta que ambos se bajaron de éste.

59. El querellante luego se retiró de las facilidades y la fémina, quien el Oficial Maisonet pudo identificar como la empleada Liriam Carrucini, entró a la planta a comenzar su turno de trabajo.

60. El Código de Conducta de FMC prohíbe que los empleados se queden en la Planta después de culminadas sus horas de trabajo y/o estar en la Planta fuera de sus horas de trabajo, a menos que esté debidamente autorizado por la supervisión o algún otro miembro de la gerencia.

61. Como parte de la investigación, el Oficial Maisonet detalló que, en su proceso habitual de mirar las cámaras, las movidas del vehículo del querellante anteriormente descritas le parecieron extrañas y que, conforme es su deber, le consultó al Capitán Cristian Cruz, y se limitó a mover las cámaras para entender lo que estaba sucediendo.

**62. La conclusión de la investigación fue que los actos del Oficial Maisonet y del Capitán Cristian Cruz fueron legítimos conforme sus órdenes de puesto y servicio de seguridad y se rechazaron las alegaciones de Josué Rodríguez y concluyeron que el Oficial Maisonet y el Señor Cristian Cruz llevaron a cabo funciones legítimas que no fueron producto de ningún tipo de acoso hacia los empleados de FMC.**

63. El querellante desconoce dónde están localizadas las cámaras de seguridad en la planta ni cuántas cámaras de seguridad hay.

64. En ningún momento el querellante presenció que un oficial de seguridad siguiera su trayectoria con las cámaras de seguridad.

65. El querellante desconoce de en qué fechas lo pudieron haber seguido con las cámaras de seguridad.

66. Laureano le dejó saber al querellante que los oficiales de seguridad en ocasiones pueden tomar control del movimiento de las cámaras si identificaran alguna actividad inusual.

67. Laureano le notificó al querellante que las cámaras vigilan el estacionamiento y le instruyó que hay un letrero en el estacionamiento que así lo avisa.

68. Laureano verificó los videos de las cámaras de seguridad para los días 16 y 17 de junio de 2021, fechas en las que el señor Soto alegó que el oficial Maisonet lo siguió con las cámaras y en ningún momento se observó que las cámaras del estacionamiento fueran movidas o relocalizadas de su monitoreo principal para enfocar o monitorear otras áreas o alguna persona en particular.

69. Laureano verificó los horarios de trabajo y la data del sistema de control de acceso de FMC del señor Soto y el oficial Maisonet para los días 16 y 17 de junio de 2021. Ambos días, el señor Soto trabajó en horario de 11pm a 6:30am, mientras que Maisonet trabajó de 1:00pm a 9:30pm. Es decir, que en dichos días, el señor Soto y Maisonet no coincidieron.

70. Luego de inicialmente negar bajo juramento que tuviese una relación sentimental con Liriam Caruccini, el querellante admitió bajo juramento que sostenía una relación extramarital con dicha compañera.

71. El querellante está casado con María Reyes Piñeiro.

**72. La parte querellante acordó no solicitar daños emocionales ni angustias mentales, por lo cual no se hicieron preguntas de dicha naturaleza durante la deposición del querellante**. (Énfasis nuestro).[12]

Inconforme con dicha determinación, el señor Soto González acude ante nos a los fines de solicitar la revocación de la *Sentencia* apelada. En su escrito, plantea los siguientes señalamientos de error:

Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Arecibo, al desestimar por la vía sumaria la reclamación presentada, a pesar de no haberse cumplido con el Artículo 2(c) de la Ley 80, *supra*; a pesar de existir cuestiones de credibilidad que hacían necesaria la celebración de un juicio en su fondo y que la investigación realizada por el patrono fue incompleta y parcializada que ni tan siquiera incluyó una entrevista con el Querellante.

Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Arecibo, al aceptar prueba inadmisible y oportunamente objetada; aceptar las declaraciones juradas y prueba adicional que no fue producida durante el descubrimiento de prueba, ni incluida en el Informe de Conferencia con descubrimiento de Prueba, ni incluida en el Informe de Conferencia con Antelación al Juicio y que fue

---

[12] Apéndice del Apelante, págs. 409-414.

preparada con el único propósito de establecer la inexistencia de controversia para que se dictara sentencia a su favor, contrario a lo establecido en la doctrina del "*sham affidavit*".

El 29 de noviembre de 2023, esta Curia emitió *Resolución* ordenando a la parte apelada a expresarse en torno al recurso presentado. En respuesta, el 18 de diciembre de 2023, FMC presentó su *Alegato en Oposición a Apelación*. Contando con la comparecencia de ambas partes, procedemos a exponer la normativa que gobierna los asuntos ante nuestra consideración.

**II.**

**A. Moción de sentencia sumaria**

Como es sabido, la moción de sentencia sumaria es un mecanismo procesal que permite la ágil disposición de casos sin la celebración de un juicio, siempre que no existan controversias genuinas de hechos materiales. *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120; *Segarra Rivera v. International Shipping Agency, Inc.*, 208 DPR 964, 979 (2022). El propósito de esta moción es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico*, 2023 TSPR 80; *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335 (2021). Procede su concesión "cuando surge claramente que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia." *Oriental Bank v. Caballero García*, 2023 TSPR 103; *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012).

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R.36.1, permite que una parte presente una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). En ese sentido, "un hecho material es aquel que puede afectar el resultado de la

reclamación de acuerdo con el derecho sustantivo aplicable. Íd., pág. 213 (citando a Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609).

A esos fines, la Regla 36.3 de Procedimiento Civil, *supra*, establece los requisitos de forma para la moción que se inste y su respectiva oposición. *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico*, 211 DPR 455, 472 (2023). El precitado cuerpo reglamentario preceptúa las formalidades que debe exhibir una moción de tal naturaleza: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;  (5) las razones por las cuales debe ser dictada la sentencia argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3(a).

En tales escenarios, la parte opositora de la sentencia sumaria "tiene que cumplir con los requisitos de la Regla 36 de Procedimiento Civil". *Oriental Bank v. Caballero García, supra*. No debe adoptar "una actitud pasiva y descansar en las aseveraciones o negaciones que consigne en su alegación". Íd.  Por tanto, enumerará los hechos materiales de buena fe controvertidos y aquellos sobre los que no media controversia. Íd. También, indicará los párrafos o páginas de la prueba documental que establezcan o impugnen cada hecho. Íd. Además, identificará "los argumentos del derecho aplicable por los cuales no se debe dictar la sentencia*". Fernández Martínez v. RAD-MAN San Juan*, *supra*, pág. 336. Ahora bien, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria. *Oriental Bank v. Caballero García*, *supra*; *Ramos Pérez v. Univisión*, 178

DPR 200, 213 (2010). **Debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes**. (Énfasis nuestro). Íd., pág. 214.

**Para determinar si existen controversias de hechos, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal"**. *Ramos Pérez v. Univisión*, *supra*, pág. 210. *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007). En cuanto a los documentos presentados, éstos deben analizarse de la forma más favorable para la parte promovida, concediéndole a ésta el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 734 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986).

En el proceso de disponer de una solicitud de sentencia sumaria**, el juzgador no podrá tomar en consideración una declaración jurada suscrita por la parte adversa si su contenido es claramente incompatible con una versión de los hechos brindada anteriormente y el exponente no clarifica, a satisfacción del tribunal, la discrepancia entre las dos posiciones**. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 440 (2013). (Énfasis nuestro). En estas instancias opera un análisis bajo la doctrina de *sham affidavit*. Según el Tribunal Supremo de Puerto Rico, esta normativa aplica cuando:

> (1) [U]na parte ha sido examinada mediante preguntas precisas y libres de ambigüedad y ha respondido en detalle durante una deposición o ha prestado previamente una declaración clara e inequívoca bajo juramento; (2) al momento de oponerse a la solicitud de sentencia sumaria esa parte presenta una declaración posterior cuyo contenido es claramente incompatible con la versión ofrecida; (3) la incompatibilidad entre las dos declaraciones resulta evidente, manifiesta o patente, y no se trata de meras discrepancias de poca transcendencia o errores de buena fe; (4) no se ofrece explicación adecuada para la nueva versión, y (5) la declaración posterior no responde al descubrimiento de nueva evidencia, la cual a pesar de una diligencia razonable, no pudo descubrirse o no estuvo disponible al momento en que se prestó la declaración previa incompatible. Lugo Montalvo v. Sol Meliá Vacation Club, 194 DPR 209, 221-222

(2015); SLG Zapata Rivera v. J.F. Montalvo, *supra*, págs. 440–442.

En ese sentido, **el tribunal rechazará una declaración subsiguiente si la inconsistencia entre las dos declaraciones resulta evidente y no se ofrece una explicación adecuada para la nueva versión.** (Énfasis nuestro). SLG Zapata Rivera v. J.F. Montalvo, *supra*, págs. 440–441. De igual modo, no es permisible la utilización de este subterfugio para que una parte se retracte de su testimonio bajo juramento con el fin de evitar dictar sentencia sumaria contrario al objetivo de la Regla 36 de Procedimiento Civil. Íd. pág. 441. No obstante, **esta doctrina no se existe a aquellas "inconsistencias de poca trascendencia que resultan de discrepancias o errores de buena fe o de evidencia descubierta posteriormente**". Íd. (Énfasis nuestro).

Por otro lado, no es recomendable emplear el mecanismo sumario en aquellos casos en los cuales median elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia. *Segarra Rivera v. International Shipping Agency, Inc., supra,* pág. 980; *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994). **No obstante, amerita su concesión "si el juzgador queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que una vista en los méritos es innecesaria**". (Énfasis nuestro). *Birriel Colón v. Supermercado Los Colobos*, *supra*; *SLG Fernández-Bernal v. RAD-MAN et al.*, *supra*, pág. 337.

De otra parte, nuestro esquema procesal permite solicitar una sentencia sumaria por insuficiencia de la prueba. *Ramos Pérez v. Univisión, supra*, pág. 218; *Pérez v. El Vocero de P.R.,* 149 DPR 427, 447 (1999). Cuando el reclamante "no cuenta con evidencia suficiente para probar un elemento esencial de su caso sobre el cual tiene el peso de la prueba, procede que se dicte sentencia sumaria para desestimar la demanda". *Medina v. M.S. & D. Química P.R., Inc.*, pág. 728. En tal escenario, el promovente debe demostrar que: **(1) la vista es innecesaria; (2) el**

**demandante no cuenta con evidencia suficiente para probar algún hecho esencial, y (3) como cuestión de derecho, procede la desestimación de la reclamación**. (Énfasis nuestro). *Ramos Pérez v. Univisión, supra*, pág. 218

En resumen, el tribunal debe abstenerse a otorgar este remedio cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Acevedo Arocho v. Departamento de Hacienda de Puerto Rico, supra; Fernández-Bernal v. RAD-MAN et al.*, *supra*, págs. 335-336.

### B. Estándar de revisión de moción de sentencia sumaria ante tribunales revisores

Los tribunales revisores se encuentran en la misma posición que el foro primario para determinar si procede una sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos*, *supra*. En estas instancias, ostentamos el deber de "examinar el expediente de *novo* y verificar que las partes cumplieron con las exigencias de la Regla 36.3" *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra,* pág. 338; *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). De resolver que los hechos materiales realmente están incontrovertidos, entonces procede "revisar si el foro primario aplicó correctamente el derecho". *Oriental Bank v. Caballero García*, *supra*. Véase, también, *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra.* Cabe destacar que, el foro apelativo solo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González v. M. Cuebas*, *supra*, pág. 114. No tenemos facultad para adjudicar hechos materiales y esenciales en disputa, pues esa tarea corresponde al foro primario. Íd., pág. 115.

### C. Ley de Procedimiento Sumario de Reclamaciones Laborales

La Ley Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118, según enmendada, (en adelante, Ley Núm. 2) establece un mecanismo especial para la rápida consideración y adjudicación de las querellas presentadas empleados, principalmente, en las reclamaciones en torno a salarios, beneficios o derechos. *Peña Lacern v. Martínez Hernández*, 210 DPR 425, 434 (2022). La naturaleza sumaria de este procedimiento procura desalentar los despidos injustificados y provee al obrero despidos medios económicos para su subsistencia mientras consigue un empleo. *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 265 (2018); *Aguayo Pomales v. R & G Mortg.*, 169 DPR 36, 43 (2006)

En aras de asegurar el trámite expedito, la precitada ley dispone que "se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de las mismas o con el carácter sumario del procedimiento establecido en esta ley". 32 LPRA sec. 3120. Esta limitación facilita "la rapidez y la celeridad de la resolución de las reclamaciones, propósito al que los tribunales deben dar estricto cumplimiento". *Dávila Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 492 (1999).

### D. El despido injustificado en Puerto Rico

Nuestro ordenamiento laboral está orientado a la protección de los trabajadores y evitar las prácticas injustas del trabajo. *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 903 (2011). A esos fines, la Ley sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a, según enmendada, (en adelante, Ley Núm. 80), garantiza el derecho a recibir indemnización a los empleados despedidos sin justa causa. Esta medida legislativa aplica a los empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) estén contratados sin tiempo determinado; (2) reciban una remuneración y (3) sean despedidos de su cargo sin que haya mediado justa causa. Íd., pág.

906. La precitada ley procura evitar las actuaciones arbitrarias del patrono e impone remedios económicos para desalentar los despidos injustificados. *Ortiz Ortiz v. Medtronic Puerto Rico Operations*, Co., 209 DPR 759, 770 (2022*); SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 929 (2015). A su vez, "tiene un fin reparador al proveer a los empleados remedios consustanciales a los daños causados por despidos injustificados". *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 596 (2013); *Beauchamp v. Holsum Bakers of P.R.*, 116 DPR 522, 526 (1985).

Ahora bien, no existe una prohibición absoluta contra el despido de un empleado. *Rivera Figueroa v. The Fuller Brush Co*, *supra*, pág. 904. Aunque la referida ley no define con precisión lo que constituye un despido injustificado, enumera una serie de supuestos que justifican el despedido de un empleado. Específicamente, el Artículo 2 de la Ley Núm. 80, *supra*, fija una serie instancias que justifican el despido de un empleado:

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o

productividad del establecimiento según los cuales se justifica el despido de un empleado. 29 LPRA sec. 185b.

Es menester destacar que, la Ley Núm. 80, *supra*, no es un código de conducta, ni establece una lista de faltas definidas o taxativas ya que no pretende, ni puede, considerar la variedad de circunstancias y normas de los múltiples establecimientos de trabajo. *González Santiago v. Baxter Healthcare of Puerto Rico*, 202 DPR 281, 292 (2019); *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 930 (2015). El examen jurídico requiere considerar que el despido no está motivado por razones **legalmente prohibidas y no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono**. (Énfasis nuestro). 29 LPRA sec. 185b. Véase, además, *González Santiago v. Baxter Healthcare of Puerto Rico, supra*., pág. 302.  De hecho, aunque no se avala el despido ante una primera sanción, "**el citado estatuto no excluye de la sanción o despido en primera o única ofensa aquella falta cuya intensidad de agravio así lo requiera en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran**". (Énfasis nuestro). *Feliciano Martes v. Sheraton*, 182 DPR 368, 383 (2011); *Rivera v. Pan Pepín,* 61 DPR 681, 690 (2004).

Por ejemplo, en *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 DPR 643, 659 (1994**), el Tribunal Supremo de Puerto Rico determinó que fue justificado el despido de un empleado que incurrió en hostigamiento sexual, a pesar de ser su primera falta**. (Énfasis nuestro). Véase, también, *González Santiago v. Baxter Healthcare of Puerto Rico,* supra, pág. 293.  En escenarios de esta naturaleza, "constituiría una imprudencia esperar su reiteración para despedir al empleado". *Rivera v. Pan Pepín, supra, pág.* 690*; Delgado Zayas v. Hosp. Int. Med. Avanzada*, *supra*, pág. 650.

Una vez un empleado insta una causa de acción bajo la precitada ley, el patrono debe demostrar mediante preponderancia de la prueba, que medió justa causa para el mismo. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, *supra*, pág. 774; *Rivera Figueroa v. The Fuller Brush Co.,*

*supra*, págs. 906–907. Le corresponde derrotar la presunción de que "todo despido es injustificado". *Rivera Figueroa v. The Fuller Brush Co, supra,* pág. 906. En particular, la ley le impone "la carga probatoria de justificar en la afirmativa su actuación, exponiendo en la contestación a una querella los hechos que dieron origen al despido" *Feliciano Martes v. Sheraton*, 182 DPR 368, 385 (2011); *Báez García v. Cooper labs., Inc.,* 120 DPR 145, 151-153 (1987).

### F. Ley para Prohibir el Hostigamiento Sexual

La Ley para Prohibir el Hostigamiento Sexual en el Empleo, Ley Núm. 17 de 22 de abril de 1988, 29 LPRA sec. 155, según enmendada, (en adelante, Ley Núm. 17) adopta e implanta como política pública la prohibición expresa de conducta constitutiva de hostigamiento e impone responsabilidades sobre el patrono. *Casillas Carrasquillo v. Estado Libre Asociado de Puerto Rico*, 209 DPR 240, 249 (2022). Esta medida legislativa "está cimentada en disposiciones constitucionales que propugnan el respeto a la dignidad humana y la igualdad ante la ley". Art. II, Sec. 8, Const. ELA, LPRA, Tomo 1; *In re Robles Sanabria*, 151 DPR 483, 499 (2000).

Nuestro ordenamiento jurídico reconoce la modalidad de hostigamiento sexual por ambiente hostil. Esta vertiente ocurre cuando la conducta de naturaleza sexual "**interfiere irrazonablemente con el desempeño del empleado en su trabajo o es lo suficientemente severa y ofensiva como para crearle al empleado que es víctima de la misma, un ambiente de trabajo que resulte intimidante, hostil y ofensivo**". (Énfasis nuestro). *SLG Afanador v. Roger Electric,* 156 DPR 651, 662 (2002). El Artículo 3 de la Ley Núm. 17, 29 LPRA sec. 155(b), prohíbe cualquier tipo de acercamiento sexual no deseado en el empleo, requerimiento de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual que (1) interfiera con el trabajo de una persona, (2) constituya un ambiente intimidante u ofensivo, o (3) cuya aceptación o rechazo se utilice como fundamento para emplear a una persona o incidir sobre sus condiciones de trabajo. *Caballer Rivera v. Adriel Toyota*, 200

DPR 120, 126 (2018). Al respecto, nuestro Tribunal Supremo ha adoptado el siguiente análisis:

> La justiciabilidad de una reclamación por ambiente hostil no requiere que dicha conducta produzca un daño económico y tampoco es indispensable que ésta sea de naturaleza explícitamente sexual; basta con que el hostigamiento o trato desigual se dirija a la persona únicamente por razón de su género. La conducta constitutiva de hostigamiento debe ser lo suficientemente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo abusivo. Este examen debe realizarse tomando en consideración factores como la naturaleza de la conducta alegada, su frecuencia e intensidad, el contexto en el que ocurre, su duración, y la conducta y circunstancias personales de la alegada víctima. *Albino v. Ángel Martínez, Inc.*, 171 DPR 457, 472 (2007); *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 DPR 117, 131-132 (1990).

En aras de prohibir esta conducta, la precitada ley exige al patrono "mantener el centro de trabajo libre de hostigamiento sexual e intimidación y deberá exponer claramente su política contra el hostigamiento sexual ante sus supervisores y empleados y garantizará que puedan trabajar con seguridad y dignidad". 29 LPRA sec. 155i. En particular, el Artículo 10 de la Ley Núm. 17, *supra*, establece que el patrono deberá tomar las medidas que sean necesarias o convenientes con ese propósito incluyendo, pero sin limitarse a las siguientes:

> (a) Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.

> (b) Poner en práctica los métodos necesarios para crear conciencia y dar conocer la prohibición del hostigamiento sexual en el empleo.

> (c) Dar suficiente publicidad en el lugar de trabajo, para los aspirantes, a empleo de los derechos y protección que se les confiere y otorga bajo esta Ley, al amparo de la Ley Núm. 69 del 6 de julio de 1985, de la Ley Núm. 100 de 30 de junio de 1959, según enmendada y de la Constitución del Estado Libre Asociado de Puerto Rico.

> (d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. 29 LPRA sec. 155i

De acuerdo con la Ley Núm. 17, *supra*, un patrono será responsable por los actos de hostigamientos en el lugar de trabajo si éste o sus agentes o sus supervisores sabían o debían estar enterados de dicha conducta **a menos que el patrono pruebe que tomó una acción inmediata y**

**apropiada para corregir la situación.** 29 LPRA sec. 155e. Este mandato "impone al patrono la responsabilidad afirmativa en la prevención, prohibición y erradicación del hostigamiento sexual en el empleo". *Casillas Carrasquillo v. Estado Libre Asociado de Puerto Rico*, supra, pág. 250; *Albino v. Ángel Martínez, Inc.*, *supra*, pág. 470 (2007).

En *Rosa Maisonet v. ASEM*, 192 DPR 368, 393 (2015), nuestro alto foro reitera el deber del patrono en circunstancias de despido por razón de hostigamiento sexual:

> **[R]solvemos que la Ley Núm. 17, supra, no le exige a un patrono probar un caso prima facie de hostigamiento sexual a su empleado para poder despedirlo como sanción por incumplir con las normas de hostigamiento sexual de su empresa. Lo que sí exige esta ley a todo patrono es el deber de realizar actos afirmativos para desalentar el hostigamiento sexual en el ámbito laboral y promover activamente una política de prevención. En este ejercicio, la Ley Núm. 17, supra, no impide que un patrono opte por circunscribirse a las guías mínimas enumeradas en la ley o que elija ser más riguroso y proactivo en la adopción de medidas para combatir efectivamente el hostigamiento sexual en su taller de trabajo. Ello, siempre y cuando las normas y las sanciones correspondientes contenidas en dichos Reglamentos sean razonables**. (Énfasis nuestro).

La normativa adoptada requiere examinar que al momento del despido el patrono haya tomado las **acción inmediata y apropiada para corregir la situación**. (Énfasis nuestro). Ante eventos de tal naturaleza, corresponde evaluar "las circunstancias particulares de cada caso, entre estas, la existencia de un reglamento aplicable a la situación y su cumplimiento". *Casillas Carrasquillo v. Estado Libre Asociado de Puerto Rico*, *supra*, pág. 250; *Albino v. Ángel Martínez, Inc., supra,* pág. 475.

### G. Ley de Represalias contra el Empleado por Ofrecer Testimonios

La Ley Contra el Despido Injusto o Represalias a Todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial, Ley Núm. 115 de 20 de diciembre de 1991, 29 LPRA sec. 194, según enmendada (en adelante, Ley Núm. 115), protege "a los trabajadores contra posibles represalias por parte de los patronos, motivadas por el ofrecimiento de algún testimonio o alguna información ante ciertos foros".

*Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 668 (2017); *Cordero Jiménez v. UPR*, 188 DPR 129, 136 (2013). Esta pieza legislativa "se creó con el propósito de ratificar y confirmar la política pública de alta estima a la protección de los derechos de los trabajadores". *Cordero Jiménez v. UPR, supra.* Véase, también, Exposición de Motivos de la Ley Núm. 115, *supra*.

A esos fines, la ley otorga una causa de acción en aquellas instancias en las que el empleado realiza una actividad protegida y luego "es despedido, amenazado o discriminado en el empleo"*. Rivera Figueroa v. Autoridad de Acueductos y Alcantarillados*, 177 DPR 345, 361 (2009); *Rivera Prudencio v. Mun. de San Juan*, 170 DPR 149 (2007). El alcance de su protección se extiende "a todos los empleados del Gobierno, tanto de las instrumentalidades que funcionan como negocio o empresas privadas como de aquellas que no*". Cordero Jiménez v. UPR*, 188 DPR 129, 146 (2013). Es decir, esta legislación ampara "a cualquier empleado sin distinción de puesto o empresa de manera que el mismo será de aplicación contra todo tipo de patrono". *Velázquez Ortiz v. Mun. de Humacao*, *supra*, pág. 670.

El Artículo 2(a) de la Ley Contra Represalia, *supra*, establece limitaciones a la facultad del patrono en casos de despidos. Al respecto, dispone la siguiente prohibición:

> (a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley. 29 LPRA sec. 194.

En tales instancias, la Ley Contra Represalias, *supra*, dispuso dos vías probatorias para presentar la causa de acción. *Velázquez Ortiz v. Mun. de Humacao*, *supra*, pág. 670. En primera alternativa, el empleado podrá

"probar la violación mediante evidencia directa o circunstancial". 29 LPRA sec. 194. De igual modo, "podrá además establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por esta ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo". 29 LPRA sec. 194. Una vez establecido lo anterior, le corresponderá al patrono "alegar y fundamentar una razón legítima y no discriminatoria para el despido". 29 LPRA sec. 194. Este segundo requisito exige que el reclamante demuestre que el patrono tomó una acción adversa y que existe un nexo causal entre dicha acción y el ejercicio de la actividad protegida. *Velázquez Ortiz v. Mun. de Humacao*, *supra*, pág. 671.

La relación de causalidad puede establecerse mediante el criterio de proximidad de tiempo. Íd. En tal caso, corresponde establecer que la acción adversa ocurrió al poco tiempo del empleado haber participado en la actividad protegida. Íd. No obstante, en aquellos casos en que la proximidad temporal no sea el factor más adecuado para establecer una relación de causalidad, el empleado puede recurrir a cualquier otra evidencia que obre en el expediente y que tienda a demostrar la existencia de un nexo causal. Íd.

**III.**

En el presente caso, el señor Soto González señala que incidió el foro primario al desestimar sumariamente su reclamación por despido injustificado. En particular, contiende que FMC presentó una serie de documentos y declaraciones juradas adicionales a las producidas en el descubrimiento prueba contrario a la doctrina de *sham affidavit*. También alega que su patrono lo despidió luego de presentar una queja relacionada con unas grabaciones del sistema de cámaras de seguridad de la empresa. Por tanto, arguye que tal proceder constituye una acción en represalia. En efecto, sostiene que no mediaron las circunstancias que justificaran su despido.

Amparados en nuestras facultades revisoras, nos encontramos en misma posición que el tribunal recurrido para determinar si procede dictar sentencia sumaria. En virtud de dicha norma, evaluamos sosegadamente la *Solicitud de Sentencia Sumaria,* la *Oposición*, la *Réplica* y la *Dúplica*, con sus respectivas declaraciones juradas y documentación, así como la *Sentencia* apelada. Sin embargo, no identificamos una controversia de hechos materiales ni una aplicación errónea del derecho, que impidiesen al tribunal dictar sentencia sumaria. Veamos.

En primer lugar, destacamos que FMC cumplió con los requisitos de forma que exige la Regla 36 (a) de Procedimiento Civil para solicitar un dictamen mediante la vía sumaria. Entre las formalidades más importantes, desglosó mediante párrafos enumerados setenta y cinco (75) hechos no controvertidos respaldados en la correspondiente evidencia admisible. Ante tales circunstancias, el Apelante presentó *su Oposición a Sentencia Sumaria* acompañada de su *Declaración Jurada*. En esencia, éste aseveró que no media controversia en torno a las expresiones alegadas en su contra. Al respecto, puntualizó lo siguiente:

> 58. Que como parte de la dinámica de grupo existente todos los miembros se dirigían unos a otros con confianza, provocándonos y relajando, sin que nuestras expresiones o actuaciones constituyeran algo real o con menosprecio o un insulto, o un abuso, o con deshonra, o una amenaza, u hostigamiento a cualquiera de nosotros. Incluyendo, pero, sin limitarse a la Sra. Sonia Rivera. Véase Anejo 1, Declaración Jurada, Párrafo 6.[13]

A pesar de que el Apelante negó una serie de hechos, éste no demostró mediante evidencia suficiente que existían hechos materiales en controversia. Ante la imposibilidad de prevalecer en sus argumentos, levantó un cuestionamiento bajo la doctrina de *sham affidavit*. No obstante, advertimos que esta normativa solo opera en aquellas instancias en las cuales existe una declaración jurada claramente incompatible con una versión de hechos brindada con anterioridad. Véase, *Zapata-Rivera v. J.F. Montalvo*, *supra*, págs. 440-441. En esa dirección, evaluamos

---

[13] Apéndice de Apelante, pág. 324.

minuciosamente cada declaración jurada que obra en el expediente, así como el material probatorio, y no encontramos los elementos doctrinales para determinar que el TPI dictó sentencia sumaria contrario a la aludida doctrina procesal. De hecho, las declaraciones juradas y la evidencia presentada no exhiben la incompatibilidad requerida que imposibilitara al foro apelado acoger la vía sumaria.

Asimismo, conviene destacar que, nuestro ordenamiento jurídico permite desestimar una reclamación mediante sentencia sumaria por insuficiencia de prueba. *Ramos Pérez v. Univisión, supra*, pág. 218; *Pérez v. El Vocero de P.R., supra*, pág. 447. En virtud de dicha normativa, determinamos que el demandante no cuenta con evidencia sustancial para probar los hechos esenciales en torno a su reclamación por despido injustificado. Por consiguiente, actuó correctamente el TPI al desestimar la querella instada en contra del patrono apelado.

En los méritos del caso, nos corresponde aplicar la normativa jurídica vinculante a la controversia. El Artículo de la Ley Núm. 80, *supra*, establece varias instancias para justificar el despido de un empleado. Entre otros extremos, la disposición precitada reconoce las siguientes circunstancias: (1) que el empleado incurra en un patrón de conducta impropia o desordenada; (2) que incurra en una violación reiterada de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que haya copia escritas de los mismos suministrada oportunamente al empleado. 29 LPRA sec. 185b. A su vez, el referido estatuto contempla como despido justificado aquel que no está motivado por razones legalmente prohibidas y no sea producto del mero capricho del patrono. 29 LPRA sec. 185b.

Evaluado el expediente ante nuestra consideración, determinamos que en el caso presente mediaron las circunstancias que justiciaban el despido del señor Soto González. Adviértase que luego de recibir una queja por parte de un empleado, FMC realizó varias entrevistas a trabajadores de su industria. La determinación investigativa apuntó que el apelante

emitió comentarios de índole sexual contra la señora Rivera. En lo concerniente, el foro primario destacó el siguiente hallazgo investigativo:

> Conforme detalló Rivera, Soto le dijo a Rivera que "ya no hacen hombre como [el]" y que ella no "[había] estado con hombre como [el]", a lo cual ésta respondió que ella "no ha estado con hombre como [el], porque [ella se da] a respetar." Durante las entrevistas a Sonia Rivera, FMC advino en conocimiento de que no era la primera vez que el señor Soto le hacía comentarios no deseados de índole sexual a ésta. Además, Sonia Rivera expresó que Soto le había dicho en otras ocasiones que no se iba a morir sin tener algún día "algo" con ella. Rivera expresó dichos comentarios eran no deseados y sin consentimiento alguno de parte suya y expresó sentirse incómoda y que, además, creaba así un ambiente incómodo dentro de la organización. Sonia Rivera además le notificó a la Sra. Viviana Pagán y al Sr. Armando Méndez que intentó frenar los comentarios pero que el querellante continuaba haciéndolos, dirigiéndole algún comentario de esta índole de forma semanal por mínimo un año antes de la reunión del 16 de junio del 2021. Sonia Rivera expresó que tanto el querellante como todos sus compañeros de trabajo conocían que el esposo de Rivera, el señor José Torres, también trabajaba en FMC, lo cual añadía a su preocupación sobre los comentarios de Soto. Sonia Rivera expresó que temía que su esposo se enterara del comportamiento del señor Soto.
>
> Adicional a los comentarios de índole sexual, mediante dicha investigación FMC advino en conocimiento de que un compañero de trabajo comentó que el querellante continuó utilizando palabras soeces como "me cago en la ostia" y dio palmazos en la puerta del área del break room. A lo largo de dichas investigaciones un empleado expresó estar preocupado por la seguridad de Sonia Rivera porque el querellante tendía a no medir sus palabras ni sus actuaciones.[14]

Del resultado investigativo es evidente que la conducta del apelante (1) interfirió con el trabajo de la empleada afectada y (2) produjo un ambiente ofensivo y hostil entre sus compañeros. Tal actuación constituyó un patrón de conducta impropia y desordenada. Además, sus expresiones de índole sexual configuraron una violación a las políticas reglamentaria de su empresa prohibitivas del hostigamiento sexual en el espacio laboral.

Conviene señalar que, el Code of Ethics and Business Conduct de FMC prohíbe terminantemente la conducta constitutiva de hostigamiento sexual:

> *Sexual harassment of any type is prohibited. Any use of racial epithets, ethnic or sexist slurs or any other pejorative language or behavior that is meant, by its nature or*

---

[14] Apéndice de Apelante, pág. 418.

> *implication, to denigrate, insult or show contempt or hatred for an individual or group because of his/her/their or its diversity dimension, is unacceptable and will not be tolerated.*[15]

De igual manera, la Reglas de Conductas de la compañía impiden este tipo de comportamiento:

> El acoso u hostigamiento físico, mental o sexual a o de compañeros de trabajo, empleados de contratistas, vendedores y/o visitantes queda estrictamente prohibido. Cada caso reportado será investigado para determinar acciones a tomar.[16]

Ciertamente, el apelante tenía conocimiento de los cuerpos reglamentarios precitados. Al respecto, constan sus firmas correspondientes a los años 2002, 2008, 2010, 2012 y 2017, que así lo certifican.[17]

En cumplimiento con dichos estándares, FMC tomó una acción inmediata y apropiada para detener el patrón de hostigamiento sexual provocado por el apelante. Finalizada la etapa investigativa, determinó éste incurrió en violación a las políticas reglamentarias de la compañía. En su responsabilidad afirmativa de erradicar el hostigamiento, concluyó que procedía el despido del señor Soto González.

Adviértase, también, que la Ley Núm. 17, *supra*, no le exige a FMC probar el caso de modo *prima facie* para destituir al empleado. El incumplimiento con las normas de hostigamiento sexual en el empleo es suficiente para decretar el despido como sanción. Véase, *Rosa Maisonet v. ASEM*, *supra*, pág. 393. Por tanto, determinamos que la compañía apelada rebatió satisfactoriamente la presunción de despido injustificado que amparaba al apelante. Demostró con evidencia suficiente que mediaron las circunstancias justificadas para decretar el despido señor Soto González de conformidad a la Ley Núm. 80, *supra*.

Destacamos, a su vez, que la conducta del apelante generó un ambiente intimidante, hostil y ofensivo en la industria. En tales circunstancias, hubiera constituido una imprudencia de FMC no haber

---

[15] Apéndice de Apelante, pág. 237.
[16] Apéndice de Apelante, pág. 286.
[17] Apéndice de Apelante, págs. 297-301.

decretado el despido. Recordemos, pues, que los patronos tienen el deber de mantener el centro de trabajo libre de hostigamiento sexual e intimidación. 29 LPRA sec. 155i.

A la luz de lo discutido, resulta evidente que la actuación de FMC no configuró un acto de represalia como prescribe la Ley Núm. 115, *supra.* El despido del apelante no ocurrió por el ofrecimiento de algún testimonio o una información ante la empresa. Tampoco el apelante presentó prueba para sostener que su despido responde a una acción adversa del patrono por éste participar en una actividad protegida. Al contrario, su despido constituye una sanción como consecuencia de su incumplimiento con la política empresarial en contra del hostigamiento sexual en el empleo. No obra en el expediente prueba para controvertir dicho hallazgo.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* la *Sentencia* del Tribunal de Primera Instancia mediante la cual se desestimó la querella presentada por el señor Soto González.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Álvarez Esnard concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones