Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| WILFREDO ACEVEDO RÍOS<br><br>Apelante<br><br>v.<br><br>TRIPLE S VIDA, INC.<br><br>Apelada | KLAN202500397 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.: FA2020CV00161<br><br>Sobre: Despido injustificado<br><br>Procedimiento sumario |
| --- | --- | --- |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm

Álvarez Esnard, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de julio de 2025.

Comparece el señor Wilfredo Acevedo Ríos ("señor Acevedo Ríos", "Demandante" o "Apelante") mediante un recurso de *Apelación*. Nos solicita la revocación de la *Sentencia* emitida el 4 de abril de 2025, notificada el 7 de abril de 2025, por el Tribunal de Primera Instancia ("foro primario", "foro *a quo*" o "tribunal sentenciador"). Por virtud de la misma, el foro primario declaró *Ha Lugar* la moción de sentencia sumaria presentada por Triple-S Vida ("Triple-S", "Parte Demandada" o "Parte Apelada"). Resolvió que el Apelante incurrió en reiteradas violaciones a las normas y las políticas de la empresa. En consecuencia, desestimó su reclamación laboral fundamentado en la inexistencia de hechos esenciales en controversia.

Por los fundamentos que expondremos a continuación, **revocamos** la *Sentencia* apelada, toda vez que existen hechos esenciales controversia.

Número Identificador

SEN(RES)2025_____

**I.**

El 14 de febrero de 2020, el señor Acevedo Ríos radicó una *Querella*[1] al amparo de la Ley sobre Despido Injustificado[2] y la Ley de Procedimiento Sumario de Reclamaciones Laborales[3] contra Triple-S.[4] En síntesis, alegó que fungía como supervisor de la señora Manery Borrás ("señora Borrás"), agente de la compañía apelada, con quien desarrolló una relación sentimental. No obstante, indicó que esa relación terminó en el mes de octubre de 2013. Relató que con posterioridad la señora Borrás aseveró ante su patrono que la supervisión que el Demandante desplegaba hacia ella le resultaba excesiva, severa e incómoda. Detalló que luego de ese suceso, no experimentó amonestaciones. A pesar de ello, sostuvo que el 9 de febrero de 2015 recibió una carta despido por alegada violación a las políticas y las normas de la empresa. En vista de ello, solicitó el pago en concepto de mesada y honorarios de abogado por constituir un despido injustificado.

Ante tales alegaciones, el 20 de julio de 2020, Triple-S presentó *su Contestación a la Querella.*[5] En esencia, alegó que el señor Acevedo Ríos admitió que, en efecto, tuvo una relación sentimental con la señora Borrás, lo cual constituyó una violación a las políticas de la empresa. A su vez, afirmó que esta última renunció por alegado hostigamiento sexual y laboral por parte del Demandante. Señaló que tal conducta es considerada como una grave falta según establecido en el *Manual de Conducta de Triple-S.* Adujo, también, que en una investigación oficial el empleado

---

[1] **Surge del expediente judicial que, el 17 de agosto de 2020, el Tribunal de Primera Instancia determinó que el pleito se ventilaría por la vía ordinaria, según consta en la *Minuta* notificada el 25 de agosto de 2020. En vista de ello, el foro primario optó denominar al señor Acevedo Ríos como demandante y a Triple-S como parte demandada. Por otro lado, en aras de despejar cualquier duda, conviene reseñar que, el 23 de mayo de 2017, el señor Acevedo Ríos presentó su *Querella* ante la Oficina de Mediación y Adjudicación (OMA). No obstante, este solicitó desistimiento del proceso ante dicho foro.**

[2] Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a

[3] Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118.

[4] Apéndice de la Parte Apelante, págs. 1-6.

[5] *Íd.*, págs. 7-14.

mintió sobre la ocurrencia de dicho vínculo sentimental. Por tanto, puntualizó que el despido en cuestión responde a una serie de violaciones a las normas y políticas de la empresa.

Acontecidos múltiples eventos procesales, cuyo tracto no amerita pormenorización, el 22 de julio de 2024, Triple-S sometió una *Solicitud de Sentencia Sumaria,* a la cual adjuntó material probatorio.[6] En este escrito, reiteró que el Demandante incurrió en una conducta impropia por alegado hostigamiento laboral hacia la señora Borrás. Argumentó que dicho acto por sí solo constituye una razón justificada para su destitución. Destacó, también, que este incurrió en conflicto de interés pues en cierto momento concedió un trato preferencial hacia la referida empleada. Agregó que mintió durante el proceso investigativo de la empresa. Ante la ausencia de controversia de hechos esenciales, indicó que procede la concesión de la sentencia sumaria.

Luego de numerosos trámites relacionados con el descubrimiento de prueba[7], el 4 de febrero de 2025, el señor Acevedo Ríos presentó su *Oposición a Moción de Sentencia Sumaria* acompañada de material evidenciario.[8] En esencia, arguyó que existen hechos esenciales en controversias, que impiden acoger la vía sumaria. Especificó que no se tomaron medidas disciplinarias en su contra durante el periodo quince (15) años en que laboró en Triple-S.

Tras evaluar los argumentos de las partes, el 4 de abril de 2025, el foro primario emitió *Sentencia,* notificada el 7 de abril de 2025, en la cual declaró *Ha Lugar* la sentencia sumaria peticionada por Triple-S.[9] En lo pertinente, formuló treinta y cuatro (34) determinaciones de hechos que no están en controversia:

---

[6] *Íd.*, págs. 311-496.
[7] *Íd.*, págs. 17-310 y 497-579.
[8] *Íd.*, págs. 580-745.
[9] *Íd.*, págs. 746-756.

1. El demandante, ocupó la posición de supervisor en la oficina de Triple- S ubicada en Fajardo desde el mes de abril de 2013.

2. Como supervisor, el demandante, en todo momento, tenía que cumplir con las normas y políticas de Triple-S y, mediante sus acciones, dar el ejemplo a sus subordinados.

3. Triple-S otorgó al demandante copia del Manual de Normas Generales de Conducta ("Manual de Empleados") y éste firmó el acuse de recibo.

4. También, Triple-S ofreció al demandante adiestramientos anuales sobre las normas y políticas de la compañía.

5. Triple-S otorgó al demandante copia de la Política de Hostigamiento Sexual y le ofreció adiestramientos sobre dicho tema.

6. El demandante admitió que Triple-S tiene una política de "cero tolerancia" al hostigamiento sexual, la cual conoce, y a su vez, reconoció que incurrir en dicho acto constituye una falta grave.

7. Como supervisor, el demandante, tenía, bajo su tutela, a cinco (5) empleados que ocupaban el puesto de "agentes de débito".

8. El desempeño de los "agentes de débito" se tiene que medir objetivamente para establecer los resultados obtenidos por cada empleado en sus funciones principales de venta y cobro.

9. Entre los agentes de débito supervisados por el demandante, en la oficina de Fajardo, figuraba la Sra. Manery Borrás (señora Borrás).

10. Anteriormente, el demandante también había supervisado a la señora Borrás en la oficina de Triple-S ubicada en Río Grande.10

11. Triple-S prohíbe las relaciones entre supervisores y subordinados.

12. El 1 de agosto de 2013, la Sra. Mayra Santiago ("Santiago"), en ese entonces, Coordinadora de Recursos Humanos de Triple-S, preguntó al demandante si tenía una relación con la señora Borrás.

13. En dicha ocasión, el demandante negó tener una relación con su subalterna.

14. A pesar de ello, la señora Santiago repasó con el demandante la política de hostigamiento sexual de Triple-S, y en específico, la norma de no conflicto de interés que impide la supervisión entre personas con relación de pareja.

15. Luego, mediante declaración jurada del 29 de diciembre de 2014, el demandante admitió que, en efecto, tuvo una relación sentimental con la señora Borrás e, incluso, que convivieron.

16. De manera que, el demandante mintió en una investigación de la empresa, y así lo admitió tanto en dicho afidávit como en su deposición.

17. El demandante conocía que Triple-S prohibía que tuviese una relación con una subalterna y así, lo admitió en su deposición.

18. El demandante mintió porque la señora Borrás no quería que los separaran.

19. El demandante admitió que violó la sección "Conflicto de Interés" del Manual de Empleados.

20. El Manual de Empleados de Triple-S, establece que "se considerará una falta el negarse a cooperar en cualquier investigación sobre algún incidente o accidente relacionado con las operaciones de la corporación o no informar tan pronto se tiene conocimiento.

21. Además, el demandante admitió que tuvo un trato preferencial hacía la señora Borrás.

22. No obstante, en la toma de su deposición el demandante admitió que le correspondía tratar a todos sus empleados por igual.

23. El 19 de noviembre de 2013, la señora Borrás renunció a su empleo con Triple-S.

24. La señora Borrás renunció por alegado hostigamiento sexual y laboral por parte del demandante.

25. Asimismo, antes de su renuncia, la señora Borrás se quejó de alegado hostigamiento por parte del demandante ante el Sr. Celso Quiles, gerente de distrito de Fajardo.

26. Ante la queja, Triple-S llevó a cabo una investigación ante el Equal interna y tomó declaración jurada a las partes involucradas, entre ellas el señor Acevedo.

27. Además, la señora Borrás se querelló Employment Opportunities Comission ("EEOC") por la misma razón.

28. Triple-S invirtió tiempo, dinero y esfuerzo para investigar las violaciones de las normas y políticas de la compañía por parte del demandante.

29. Además de la señora Santiago, el señor Juan Iglesias se reunió, en más de una ocasión, con el demandante para investigar la conducta de éste.

30. El Manual de Empleados de Triple-S define lo que constituye una falta simple y una grave. Así, define la falta grave de la siguiente manera: [A]quella falta que es de tal seriedad o naturaleza que revela una actitud o un detalle del carácter del empleo que resulta tan lesivo a la paz o al buen orden de la Corporación que constituiría una imprudencia esperar su reiteración para proceder a despedir al empleado. A manera de ejemplo, aquellas faltas que representen un potencial de daños que pongan en peligro la vida de una persona, o la subsistencia o buena imagen de la Corporación, que conlleven una pérdida económica significativa, para la Corporación. Algunos ejemplos son: insubordinación, agresión, hostigamiento sexual.

31. El demandante fue despedido el 9 de febrero de 2015 debido a las reiteradas violaciones graves a las normas y políticas de Triple-S.

32. Triple-S entregó una carta de despido al demandante que contenía las razones para la terminación de su empleo.

33. El 23 de mayo de 2017, el demandante presentó Demanda ante la Oficina de Adjudicación y Mediación del Departamento del Trabajo (OMA) en contra de Triple-S, alegando que fue despedido injustificadamente de su empleo, en alegada violación a la Ley Núm. 80.

34. El 23 de octubre de 2018, el demandante presentó voluntariamente un aviso de desistimiento sin perjuicio ante la OMA, el cual fue declarado con lugar. Ello, en la

etapa avanzada del proceso, luego de terminado el descubrimiento de prueba, la toma de deposición del demandante y la presentación de moción de sentencia sumaria a favor de Triple-S.[10]

Así dictaminado, el tribunal sentenciador concluyó que la actuación del señor Acevedo Ríos no resultó una violación asilada o de carácter leve. Al contrario, determinó que sus transgresiones a las normas y las políticas de Triple-S constituyeron faltas graves y lesivas para el ambiente laboral y el buen orden de la corporación. Por tanto, resolvió que la destitución responde a causas justificadas, según contemplado en la Ley Núm. 80, *supra*.

Inconforme, el 15 de mayo de 2025, el señor Acevedo Ríos recurrió ante este Tribunal de Apelaciones mediante un recurso denominado *Apelación Enmendada*.[11] En este escrito, imputó al foro primario la comisión de los siguientes errores:

> Primero: Declarar ha lugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente en la que desestimó la reclamación del apelante, a pesar de existir controversias de hechos esenciales respecto al incidente que la apelada alegó como causa para el despido, lo cual impide disponer de este pleito sumariamente.

> Segundo: No determinar que la apelada tenía que contestar las preguntas del interrogatorio, cuyas respuestas el apelante objetó, porque no aplica ningún privilegio evidenciario.

> Tercero: No determinar que la parte apelada tenía que contestar las preguntas del interrogatorio, cuyas respuestas el apelante objetó, porque las respuestas dadas no son responsivas, específicas y completas.

> Cuarto: No determinar que procedía la eliminación de las alegaciones de la apelada por negarse reiteradamente a descubrir prueba.

El 9 de mayo de 2025, esta Curia emitió *Resolución* en la cual concedió a Triple-S hasta el 6 de junio de 2025 para presentar su posición. En la fecha indicada, sometió su *Alegato de la Parte Apelada*. Con el beneficio de la comparecencia de las partes,

---

[10] *Íd.*, págs. 747-749.
[11] Puntualizamos que el 7 de mayo de 2025, el señor Acevedo Ríos originalmente presentó ante nos su escrito apelativo. No obstante, el 9 de mayo de 2025, este Tribunal emitió *Resolución* en la que ordenó al Apelante a presentar un recurso de apelación enmendado, toda vez que no procedía la concesión de la solicitud de exceso de página que interpuso al someter su apelación.

procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

## II.

### A. *Moción de sentencia sumaria*

Nuestro esquema procesal contempla el mecanismo de sentencia sumaria que permite la ágil disposición de casos sin la celebración de un juicio sujeto a la inexistencia de controversias genuinas de hechos materiales. *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022). Su propósito es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335, 350 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335 (2021). Solo procede su concesión cuando surge que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012). Ello, pues, constituye un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).

A esos fines, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite que una parte presente una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). En esa dirección, "un hecho material es aquel que puede afectar el

resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Oriental Bank v. Caballero García, supra,* pág. 679.

A tales efectos, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, prescribe los requisitos de forma atinentes a esta moción y su respectiva oposición. *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 472 (2023). Esta disposición reglamentaria fija las formalidades que debe exhibir una petición de tal naturaleza: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(a).

Por su parte, quien presente oposición a la sentencia sumaria tiene también que cumplir con los requisitos de la Regla 36 de Procedimiento Civil. *Oriental Bank v. Caballero García, supra,* pág. 680. No debe adoptar "una actitud pasiva y descansar en las aseveraciones o negaciones que consigne en su alegación". *Íd.* Al contrario, le compete, como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020).

Por tanto, el oponente a la vía sumaria enumerará los hechos materiales de buena fe controvertidos y aquellos sobre los que no media controversia. *Oriental Bank v. Caballero García, supra.*, pág. 680. También, indicará los párrafos o las páginas de la prueba documental que establezcan o impugnen cada hecho. *Íd.* A su vez, identificará "los argumentos del derecho aplicable por los cuales no se debe dictar la sentencia". *SLG Fernández-Bernal v. RAD-MAN et al, supra,* pág. 336. Ahora bien, el hecho de que la parte promovida no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica que tal moción procederá automáticamente si efectivamente existe una controversia sustancial sobre hechos materiales. *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 351.

Acatados los requisitos procesales discutidos, "el tribunal debe analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como los que obren en el expediente del tribunal". *Ramos Pérez v. Univisión,* 178 DPR 200, 210 (2010); *Cruz Marcano v. Sánchez Tarazona,* 172 DPR 526, 550 (2007). En cuanto a los documentos presentados, estos deben analizarse de la forma más favorable para la parte promovida, concediéndole así el beneficio de toda inferencia razonable que se pueda derivar de ellos. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 734 (1994); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986).

Efectuado este análisis, el foro primario podrá emitir la sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas, según fueran ofrecidas, surge que no existe una controversia real sustancial en cuanto a ningún hecho material, restando entonces resolver la controversia en estricto

derecho. *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 351. No obstante, no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. *Consejo Tit. v. Rocca Dev. Corp., et als.,* 2025 TSPR 6, 215 DPR ___ (2025); *S.L.G. Szendrey-Ramos v. Consejo Titulares,* 184 DPR 133, 167 (2011). Tampoco procederá, como norma general, el mecanismo sumario en aquellos casos en los cuales median elementos subjetivos de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia. *Segarra Rivera v. Int'l Shipping et al., supra,* pág. 980; *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301 (1994). Ahora bien, amerita su concesión "si el juzgador queda claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y que una vista en los méritos es innecesaria". *Birriel Colón v. Econo y otro, supra,* pág. 91; *SLG Fernández-Bernal v. RAD-MAN et al., supra,* pág. 337.

En el escenario de que el foro primario deniegue la moción de sentencia sumaria, constituye una obligación formular las determinaciones de hechos controvertidos e introvertidos según exige la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de

conformidad. A base de las determinaciones realizadas en virtud de esta regla el tribunal dictará los correspondientes remedios, si alguno.

Este requisito es mandatorio únicamente cuando se deniega total o parcialmente una moción de sentencia sumaria. *Pérez Vargas v. Office Depot,* 203 DPR 687, 704 (2019). Sobre este particular, el Tribunal Supremo de Puerto Rico delimita los escenarios que exigen la formulación de determinaciones de hechos:

> Conforme al texto de la regla, estas instancias son: (1) cuando no se dicta sentencia sumaria sobre la totalidad del pleito; (2) cuando no se concede todo el remedio solicitado, y (3) cuando se deniega la moción de sentencia sumaria presentada. *Íd.,* pág. 697.

De no proceder o concederse todo el remedio, el tribunal tiene el deber de atender esta moción mediante determinación de hechos esenciales pertinentes incontrovertidos, e identificar aquellos de buena fe controvertidos, y ordenar los procedimientos ulteriores que sean justos en el pleito. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil,* 6.a ed., San Juan, Ed. LexisNexis, 2017, sec. 2624. pág. 322. Véase, también, *Rosario v. Nationwide Mutual,* 158 DPR 775, 581 (2003).

### B. Estándar de revisión de las sentencias sumarias

Es normativa reiterada que, los tribunales apelativos nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. *Cruz, López v. Casa Bella y otros,* 213 DPR 980 (2024); *Birriel Colón v. Econo y otro, supra,* pág. 91. En este contexto debemos efectuar un análisis a tenor con las siguientes consideraciones:

> (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;
>
> (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra;*
>
> (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de

exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos.

(4) y de encontrar que los hechos materiales realmente están incontrovertidos debe revisar *de novo,* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Conforme a la interpretación jurisprudencial, el foro apelativo solo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015). No obstante, no tenemos facultad para adjudicar hechos materiales en disputa, pues esa tarea corresponde al foro primario. *Íd.*, pág. 115. Por consiguiente, estamos limitados a examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias pautadas en las Reglas de Procedimiento Civil. *Acevedo y otros v. Depto. Hacienda y otros, supra,* pág. 352; *SLG Fernández-Bernal v. RAD-MAN et al.*, *supra*, pág. 338, citando a *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020).

### C. *El despido injustificado en Puerto Rico*

Nuestro ordenamiento jurídico está orientado a la protección de los trabajadores para evitar las prácticas injustas en el ambiente laboral. *Rivera Figueroa v. The Fuller Brush. Co.*, 180 DPR 894, 903 (2011). En virtud de tales principios, la Ley sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976, 29 LPRA sec. 185a, según enmendada, (en adelante, "Ley Núm. 80"), garantiza el derecho a recibir indemnización a los empleados despedidos sin justa causa. El propósito de esta legislación es "proteger a los empleados de actuaciones arbitrarias del patrono mediante el establecimiento de remedios económicos que desalienten los despidos injustificados". *Méndez Ruiz v. Techno*

*Plastics Industries, Inc.,* 2025 TSPR 68, 216 DPR ___ (2025); *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 770 (2022).

Esta medida legislativa aplica a los empleados de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) estén contratados sin tiempo determinado; (2) reciban una remuneración y (3) sean despedidos de su cargo sin que haya mediado justa causa. *Rivera Figueroa v. The Fuller Brush. Co., supra* pág. 906. La precitada ley procura evitar las actuaciones arbitrarias del patrono e impone remedios económicos para desalentar los despidos injustificados. *Ortiz Ortiz v. Medtronic, supra,* pág. 770; *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 929 (2015). A su vez, "tiene un fin reparador al proveer a los empleados remedios consustanciales a los daños causados por despidos injustificados". *Reyes Sánchez v. Eaton Electrical,* 189 DPR 586, 596 (2013); *Beauchamp v. Holsum Bakers of P.R.,* 116 DPR 522, 526 (1985).

Ahora bien, no existe una prohibición absoluta contra el despido de un empleado. *Figueroa v. The Fuller Brush. Co., supra,* pág. 904. Aunque la Ley Núm. 80 no define con precisión qué constituye un despido injustificado, enumera una serie de supuestos que justifican el despedido de un empleado.

Particularmente, el Artículo 2 de la Ley Núm. 80, *supra,* delimita una serie circunstancias que justifican el despido de un empleado:

(a) **Que el empleado incurra en un patrón de conducta impropia o desordenada.**

(b) **Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.**

(c) **Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.**

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público. (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento. 29 LPRA sec. 185b. (Énfasis suplido).

Nótese que esta legislación no es un código de conducta, ni establece una lista de faltas definidas o taxativas, puesto que no pretende, ni puede considerar la variedad de circunstancias y normas de los múltiples establecimientos de trabajo. *González Santiago v. Baxter Healthcare*, 202 DPR 281, 292 (2019); *SLG Torres-Matundan v. Centro Patología,* 193 DPR 920, 930 (2015).

Ahora bien, es menester discutir que, pueden existir circunstancias que no estén contempladas en el Artículo 2 de la Ley Núm. 80, *supra.* En este contexto, se debe efectuar la siguiente evaluación:

Hemos expresado que cuando un patrono despide a un empleado por un supuesto no incluido en la Ley de Despido Injustificado, nuestro análisis para determinar si hubo justa causa debe estar dirigido a identificar si el mismo fue motivado por razones legalmente prohibidas, se hizo por capricho del patrono o sin razón vinculada con el buen y normal funcionamiento del establecimiento. *Méndez Ruiz v. Techno Plastics Industries, Inc., supra.*

Aunque no se avala el despido ante una primera sanción, "el citado estatuto no excluye de la sanción o despido en primera o única ofensa aquella falta cuya intensidad de agravio así lo requiera en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran". *Feliciano Martes v. Sheraton,* 182 DPR 368, 383 (2011); *Rivera v. Pan Pepín,* 61 DPR 681, 690 (2004).

A maneras de ilustración, reseñamos el caso *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 DPR 643 (1994), en el que Tribunal Supremo de Puerto Rico determinó que fue justificado el despido de un empleado que incurrió en hostigamiento sexual, a pesar de ser su primera falta. Véase, también, *González Santiago v. Baxter Healthcare, supra*, pág. 293. En escenarios de esta naturaleza, "constituiría una imprudencia esperar su reiteración para despedir al empleado". *Rivera v. Pan Pepín, supra, pág.* 690*; Delgado Zayas v. Hosp. Int. Med. Avanzada, supra*, pág. 650.

Así pues, una vez un empleado insta una causa de acción bajo la precitada ley, el patrono debe demostrar mediante preponderancia de la prueba, que medió justa causa para el mismo. *Ortiz Ortiz v. Medtroni., supra*, pág. 774; *Rivera Figueroa v. The Fuller Brush. Co., supra*, págs. 906-907. Sobre este particular, recientemente, entiéndase, el 26 de junio de 2025, el Alto Foro estatal en *Méndez Ruiz v. Techno Plastics Industries, Inc., supra*, reiteró esta normativa:

> Establece una presunción de que todo despido es injustificado y le impone al patrono el deber de demostrar, mediante preponderancia de la prueba, que hubo justa causa para el mismo. *Ortiz Ortiz v. Medtronic, supra,* pág. 774. No obstante, para disfrutar de dicha presunción, el demandante tiene la obligación de aportar prueba que establezca los hechos básicos que dan lugar a la presunción, a saber: (1) que fue empleado por tiempo indeterminado del patrono; (2) que recibía remuneración por su trabajo, y (3) que fue despedido de su puesto. *Íd.,* pág. 775. Véase, además, *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 907 (2011). Una vez se activa la presunción estatutaria a favor del obrero, el patrono tiene la obligación de presentar prueba para rebatir la presunción y, además, persuadir al juzgador de los hechos.

En específico, la Ley Núm. 80 le impone "la carga probatoria de justificar en la afirmativa su actuación, exponiendo en la contestación a una querella los hechos que dieron origen al despido" *Feliciano Martes v. Sheraton, supra*, pág. 385; *Báez García v. Cooper labs., Inc.,* 120 DPR 145, 151-153 (1987).

### D. *Hostigamiento sexual en el empleo*

La Constitución de Puerto Rico contempla el derecho de todo trabajador a estar protegido contra riesgos a su salud o integridad personal en su empleo. Art. II, Sec. 16, Const. PR, LPRA, Tomo 1. A esos fines, la Asamblea Legislativa adoptó la Ley para Prohibir el Hostigamiento Sexual, Ley Núm. 17 de 22 de abril de 1988, 29 LPRA sec. 155, según enmendada, ("Ley Núm. 17"). La precitada legislación procura la prohibición expresa de conducta constitutiva de hostigamiento e impone responsabilidades sobre el patrono. *Casillas Carrasquillo v. ELA,* 209 DPR 240, 249 (2022). Así pues, "está cimentada en disposiciones constitucionales que propugnan el respeto a la dignidad humana y la igualdad ante la ley". Art. II, Sec. 8, Const. PR, LPRA, Tomo 1; *In re Robles Sanabria,* 151 DPR 483, 499 (2000).

En esa línea, nuestro ordenamiento legal reconoce la modalidad de hostigamiento sexual por ambiente hostil. Esta vertiente ocurre cuando la conducta de naturaleza sexual "interfiere irrazonablemente con el desempeño del empleado en su trabajo o es lo suficientemente severa y ofensiva como para crearle al empleado que es víctima de la misma, un ambiente de trabajo que resulte intimidante, hostil y ofensivo". *S.L.G. Afanador v. Roger Electric Co., Inc.,* 156 DPR 651, 662 (2002).

A esos efectos, el Artículo 3 de la Ley Núm. 17, *supra,* 29 LPRA sec. 155(b), proscribe esta conducta de la siguiente manera:

> **El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual o que sea reproducida utilizando cualquier medio de comunicación incluyendo, pero sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por cualquier medio electrónico, cuando se da una o más de las siguientes circunstancias:**
>
> **(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.**

**(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.**

**(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante hostil u ofensivo.**
(Énfasis nuestro).

Obsérvese que el artículo referido prohíbe cualquier tipo de acercamiento sexual no deseado en el empleo, requerimiento de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual que: (1) interfiera con el trabajo de una persona, (2) constituya un ambiente intimidante u ofensivo, o (3) cuya aceptación o rechazo se utilice como fundamento para emplear a una persona o incidir sobre sus condiciones de trabajo. *Caballer Rivera v. Adriel Toyota et al.*, 200 DPR 120, 126 (2018). Sore este asunto, el Tribunal Supremo de Puerto Rico ha adoptado el siguiente análisis:

> La justiciabilidad de una reclamación por ambiente hostil no requiere que dicha conducta produzca un daño económico y tampoco es indispensable que ésta sea de naturaleza explícitamente sexual; basta con que el hostigamiento o trato desigual se dirija a la persona únicamente por razón de su género. **La conducta constitutiva de hostigamiento debe ser lo suficientemente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo abusivo. Este examen debe realizarse tomando en consideración factores como la naturaleza de la conducta alegada, su frecuencia e intensidad, el contexto en el que ocurre, su duración, y la conducta y circunstancias personales de la alegada víctima**. *Albino v. Ángel Martínez, Inc.*, 171 DPR 457, 472 (2007); *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 DPR 117, 131-132 (1990). (Énfasis nuestro).

En aras de prohibir esta conducta, la precitada legislación exige al patrono "mantener el centro de trabajo libre de hostigamiento sexual e intimidación y deberá exponer claramente su política contra el hostigamiento sexual ante sus supervisores y empleados y garantizará que puedan trabajar con seguridad y dignidad". 29 LPRA sec. 155i. En específico, el Artículo 10 de la Ley Núm. 17, *supra,* prescribe que el patrono adopte las medidas

necesarias o convenientes para evitar el hostigamiento sexual en el empleo:

> (a) Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.
>
> (b) Poner en práctica los métodos necesarios para crear conciencia y dar conocer la prohibición del hostigamiento sexual en el empleo.
>
> (c) Dar suficiente publicidad en el lugar de trabajo, para los aspirantes, a empleo de los derechos y protección que se les confiere y otorga bajo esta Ley, al amparo de la Ley Núm. 69 del 6 de julio de 1985, de la Ley Núm. 100 de 30 de junio de 1959, según enmendada y de la Constitución del Estado Libre Asociado de Puerto Rico.
>
> (d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. 29 LPRA sec. 155i.

De conformidad con el Artículo 6 de la Ley Núm. 17, *supra,* "[u]n patrono será responsable por los actos de hostigamiento sexual entre empleados, en el lugar de trabajo si el patrono o sus agentes o sus supervisores sabían o debían estar enterados de dicha conducta a menos que el patrono pruebe que tomó una acción inmediata y apropiada para corregir la situación". 29 LPRA sec. 155e. Este mandato "impone al patrono la responsabilidad afirmativa en la prevención, prohibición y erradicación del hostigamiento sexual en el empleo". *Casillas Carrasquillo v. ELA, supra,* pág. 250; *Albino v. Ángel Martínez, Inc., supra,* pág. 470 (2007).

En *Rosa Maisonet v. ASEM,* 192 DPR 368, 393 (2015), nuestro Alto Foro puertorriqueño reitera el deber del patrono en circunstancias de despido por razón de hostigamiento sexual:

> [R]esolvemos que la Ley Núm. 17, *supra,* no le exige a un patrono probar un caso *prima facie* de hostigamiento sexual a su empleado para poder despedirlo como sanción por incumplir con las normas de hostigamiento sexual de su empresa. Lo que sí exige esta ley a todo patrono es el deber de realizar actos afirmativos para desalentar el hostigamiento sexual en el ámbito laboral y promover activamente una política de prevención. En este ejercicio, la Ley Núm. 17, *supra,* no impide que un patrono opte por circunscribirse a las guías mínimas enumeradas en la ley o que elija ser más riguroso y proactivo en la adopción de medidas para combatir efectivamente el hostigamiento sexual en su taller de trabajo. **Ello, siempre y cuando las**

**normas y las sanciones correspondientes contenidas en dichos Reglamentos sean razonables**. (Énfasis nuestro).

La normativa adoptada requiere examinar que al momento del despido el patrono haya tomado las acciones razonables y apropiadas para corregir la situación. Al analizar la actuación del patrono corresponde examinar "las circunstancias particulares de cada caso, entre estas, la existencia de un reglamento aplicable a la situación y su cumplimiento". *Casillas Carrasquillo v. ELA*, *supra*, pág. 250; *Albino v. Ángel Martínez, Inc., supra,* pág. 475.

### E. Descubrimiento de prueba

En nuestro esquema procesal impera el principio de un descubrimiento de prueba amplio y liberal. *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 496 (2022). Esta normativa persigue los siguientes propósitos: (1) precisar los asuntos en controversia; (2) obtener evidencia para ser utilizada en el juicio, evitando así sorpresas en la etapa de los procedimientos; (3) facilitar la búsqueda de la verdad, y (4) perpetuar evidencia. *Rivera y otros v. Bco. Popular,* 152 DPR 140, 152 (2000). De tal manera, se facilita la consecución de evidencia, se evitan las sorpresas en el juicio y se perpetúa la prueba. *García Rivera et al. v. Enríquez*, 153 DPR 323, 333 (2001). Además, las partes pueden prepararse para el juicio debido a que tienen la oportunidad de obtener la evidencia necesaria para evaluar y resolver las controversias del caso. *Rivera y otros v. Bco. Popular, supra*, pág. 152.

Ahora bien, los Tribunales de Primeras Instancia ostentan amplia discreción para regular el ámbito del descubrimiento, pues tienen la obligación de garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 203 (2023). En virtud de tales principios, el Tribunal Supremo de Puerto Rico ha delineado las siguientes consideraciones:

> En el ejercicio de esta facultad, los tribunales deberán hacer un balance entre dos intereses de gran importancia para el adecuado desenvolvimiento de la labor de impartir justicia a través del sistema judicial: de una parte deberán garantizar la pronta solución de las controversias, y de otra, velar por que las partes tengan la oportunidad de llevar a cabo un amplio descubrimiento de forma tal que en la vista en su fondo no surjan sorpresas. *Rivera y Otros v. Bco. Popular, supra*, págs. 154-155.

A la luz de lo anterior, como norma general, somos deferentes a la amplia discreción del foro primario en cuanto su facultad para regular el descubrimiento de prueba. Por tanto, los foros apelativos no debemos intervenir con dicha discreción, salvo que medie prejuicio, parcialidad o error manifiesto en la aplicación de una norma procesal o sustantiva. *McNeil Healthcare v. Mun. Las Piedras II*, 206 DPR 659, 672 (2021).

### F. Discreción judicial en el manejo de casos

Cónsono con lo discutido, es menester recordar que, los jueces del foro primario gozan de amplia flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. *In re Collazo I*, 159 DPR 141, 150 (2003). Es decir, ostentan la autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. *Íd.* A su vez, tales facultades permiten que los juzgadores de hechos manejen los casos conforme con su discreción judicial. Por lo que, tienen autoridad para actuar dentro de "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera" *Rivera et al. v. Arcos Dorados et al.*, *supra*, pág. 210, No obstante, en este ejercicio discrecional "el tribunal no puede actuar en una forma u otra haciendo abstracción del derecho". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013).

Así pues, el foro primario tiene el deber ineludible de garantizar que los procedimientos se ventilen sin demora y con

miras a que se logre una justicia rápida y eficiente. *In re Pagani Padró*, 181 DPR 517, 529 (2011). Por tal razón, los tribunales revisores apelativos no debemos sustituir el criterio producto de la discreción judicial, salvo que se pruebe (1) una actuación con prejuicio o parcialidad; (2) craso abuso de discreción, o (3) una equivocación en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera Gómez v. Arcos Dorado de Puerto Rico, supra,* pág. 210.

### III.

Amparado en su derecho a la revisión judicial, el señor Acevedo Ríos nos invita a revocar la *Sentencia* sumaria dictada en su contra. Señala que existen controversias de hechos esenciales respecto a las causas de su destitución. Aduce que corresponde adjudicar por la vía ordinaria las versiones en contradicción brindadas sobre: (1) el asunto de su relación sentimental con la señora Borrás, (2) las razones de la renuncia de esta, y (3) el trato que el Apelante le brindó. Por otro lado, solicita nuestra intervención apelativa para garantizar su derecho al descubrimiento de prueba. Reclama particularmente la dilucidación de una controversia en torno a privilegio evidenciario y un interrogatorio suministrado a la Parte Apelada. Ante ello, peticiona la eliminación de sus alegaciones por negarse a descubrir prueba.

Por su parte, Triple-S asevera que el señor Acevedo Ríos incurrió en una relación sentimental con una empleada que supervisaba en contravención a las normas y políticas laborales. Expresa que ello generó un conflicto de intereses según dispuesto en el Manual de Empleados. Asegura, además, que la señora Borrás renunció por alegado hostigamiento laboral y sexual por parte del Apelante. En vista de tales circunstancias, indica que celebró una investigación interna. Sin embargo, manifestó que el

empleado mintió en dicho procedimiento. Ante el entendido de inexistencia de hechos en controversia, argumenta que su destitución respondió a las reiteradas violaciones graves a las normas y políticas de la empresa. Por último, en cuanto a los argumentos sobre el descubrimiento de prueba, alega que este concluyó el 28 de junio de 2025, por lo que, no procede su apertura.

En la atención del primer señalamiento de error, debemos responder si erró el foro primario al concluir que no existen hechos esenciales en controversia en torno al despido del señor Acevedo Ríos. Contestamos en la afirmativa. Adelantamos que existen controversias de hechos esenciales que impiden acoger la vía sumaria para dilucidar la reclamación laboral ante nos. Veamos.

En primer lugar, puntualizamos que estamos en igual posición que el Tribunal de Primera Instancia para examinar *de novo* el expediente y aplicar los criterios atinentes a esta clase de remedio procesal. A esos efectos, disponemos que tanto la moción de sentencia sumaria presentada por Triple-S, así como la oposición sometida por el señor Acevedo Ríos, exhiben las formalidades contenidas en la Regla 36.3 de Procedimiento Civil, *supra.* El íntegro cumplimiento de estos criterios nos permite atender en sus méritos la solicitud de sentencia sumaria así como su escrito en oposición.

Dispuesto lo anterior, en segundo lugar, establecemos que en este caso no procede aplicar el mecanismo de la sentencia sumaria por **existir hechos materiales en controversia.** Ante la denegatoria de dicha solicitud, nos concierne especificar aquellos hechos introvertidos y controvertidos que identificamos en el proceso de revisión judicial. En cumplimiento de la Regla 36.4 de Procedimiento Civil, *supra,* formulamos las siguientes

determinaciones de hechos a la luz de la prueba obrante en el expediente judicial:

### i. Hechos incontrovertidos

1. El señor Acevedo Ríos ("señor Acevedo Ríos" o "Demandante") ocupó la posición de supervisor en la oficina Triple-S ("Parte Demandada") ubicada en Fajardo desde el mes de abril de 2013.[12]

2. El Demandante ostentaba el deber de cumplir con las normas y políticas de Triple-S y, mediante sus acciones dar ejemplo a aquellos empleados que supervisaba.[13]

3. Triple-S le concedió al Demandante copia del Manual de Empleados y este firmó el acuse de recibo.[14]

4. La Parte Demandada le ofreció adiestramientos anuales sobre las normas y las políticas de la compañía.[15]

5. En particular, Triple-S le brindó al Demandante copia de la Política de Hostigamiento Sexual y le ofreció adiestramiento sobre dicho tema.[16]

6. El Demandante admitió que Triple-S tiene una política de cero tolerancia al hostigamiento sexual, la conoce, y a su vez, reconoció que incurrir en tal implica una falta grave.[17]

7. Como supervisor, el Demandante tenía bajo su mando a cinco (5) empleados que ocupaban el puesto de agentes de débitos.[18]

8. El desempeño de los agentes de débitos se debe medir objetivamente para establecer los resultados obtenidos por casa empleados en sus funciones principales de venta y cobro.[19]

9. Entre los agentes de débitos supervisados por el señor Acevedo Ríos se encontraba la señora Manery Borrás ("señora Borrás").[20]

10. Con anterioridad, el Demandante supervisó a la señora Borrás en la oficina de Triple-S ubicada en Río Grande.[21]

11. El 1 de agosto de 2013, la Sra. Mayra Santiago ("Santiago"), Coordinadora de Recursos Humanos de Triple-S, le preguntó al Demandante si tenía una relación con la señora Borrás.[22]

12. En dicha ocasión, el Demandante negó tener una relación con su subalterna.[23]

13. A pesar de ello, la señora Santiago repasó con el demandante la política de hostigamiento sexual de Triple-S, y en específico, la norma de no conflicto de

---

[12] Apéndice de la Parte Apelante, págs. 422 y 425.
[13] Íd., págs. 425 y 445.
[14] Íd., pág. 445.
[15] Íd., pág. 439, líneas 12-25.
[16] Íd., pág. 429, líneas 16-21.
[17] Íd., pág. 423.
[18] Íd., pág. 430, líneas 1-17.
[19] Íd., pág. 431, líneas 6-11.
[20] Íd., págs. 422 y 425.
[21] Íd., pág. 422.
[22] Íd., pág. 427.
[23] Íd., págs. 423, 427 y 446.

      interés que impide la supervisión entre personas con relación de pareja.[24]

14. Luego, mediante declaración jurada del 29 de diciembre de 2014, el Demandante admitió que, en efecto, tuvo una relación sentimental con la señora Borrás.[25]

15. El Demandante mintió en una investigación de la empresa, y así lo admitió tanto en dicha declaración como en su deposición.[26]

16. El demandante explicó que mintió porque la señora Borrás no quería que los separaran.[27]

17. El *Manual de Empleados* de Triple-S establece que "se considerará una falta el negarse a cooperar en cualquier investigación sobre algún incidente o accidente relacionado con las operaciones de la corporación o no informar tan pronto se tiene conocimiento".[28]

18. El Demandante admitió que le correspondía tratar a todos sus empleados por igual.[29]

19. El 19 de noviembre de 2013, la señora Borrás suscribió una carta de renuncia a su empleo con Triple-S. en la que indicó que experimentó alegado hostigamiento sexual por parte del Demandante.[30]

20. El despido del demandante fue el 9 de febrero de 2015.[31]

21. El 23 de mayo de 2017, el Demandante presentó una reclamación ante la Oficina de Adjudicación y Mediación del Departamento del Trabajo ("OMA") en contra de Triple-S. En esta alegó que fue despedido injustificadamente de su empleo en alegada violación a la Ley Núm. 80, *supra.*[32]

22. El 23 de octubre de 2018, el Demandante sometió voluntariamente un aviso de desistimiento sin perjuicio ante la OMA el cual fue declarado *con lugar*. El desistimiento ocurrió luego de terminado el descubrimiento de prueba y la presentación de moción de sentencia sumaria a favor de Triple-S.[33]

23. Por su parte, la señora Borrás se querelló ante el Equal Employment Opportunities Comission ("EEOC") por alegado hostigamiento sexual en el empleo.[34]

24. El Manual de Empleados de Triple-S define lo que constituye una falta simple y una grave. Así, define la falta grave de la siguiente manera:

[A]quella falta que es de tal seriedad o naturaleza que revela una actitud o un detalle del carácter del empleo que resulta tan lesivo a la paz o al buen orden de la Corporación que constituiría una imprudencia esperar su reiteración para proceder a despedir al empleado. A manera de ejemplo, aquellas faltas que representen un potencial de daños que pongan en peligro la vida de una persona, o la subsistencia o buena imagen de la Corporación, que conlleven una pérdida económica significativa, para la Corporación.

---

[24] *Íd.*, pág. 446.
[25] *Íd.*, pág. 423.
[26] *Íd.*, pág. 427, líneas 2-25; pág. 428, líneas 1-14; pág. 423.
[27] *Íd.*, pág. 428, líneas 13-17.
[28] *Íd.*, pág. 466.
[29] *Íd.*, pág. 433, líneas 5-22.
[30] *Íd.*, pág. 490.
[31] *Íd.*, pág. 491.
[32] *Íd.*, págs. 328-332.
[33] *Íd.*, págs. 402-414,
[34] *Íd.*, págs. 492-493.

Algunos ejemplos son: insubordinación, agresión, hostigamiento sexual, la apropiación ilegal, fraude, violaciones éticas, entre otros. Este tipo de falta puede conllevar despido sin derecho a cubierta COBRA.[35]

### ii. Hechos esenciales en controversia

1. La causa del despido del señor Acevedo Ríos responde a reiteradas violaciones graves a las normas y políticas de Triple-S.[36]

2. Triple-S prohíbe las relaciones entre supervisores y subordinados.[37]

3. El Demandante conocía que Triple-S prohibía que tuviese una relación con personas que supervisaba.[38]

4. El Demandante admitió que violó la sección *Conflicto de Interés* del Manual de Empleados.[39]

5. Este admitió que tuvo un trato preferencial hacia la señora Borrás.[40]

6. Ante la queja de alegado hostigamiento sexual, Triple-S llevó a cabo una investigación interna y se tomó declaración jurada a las partes involucradas, entre ellas el señor Acevedo Ríos.[41]

7. Previo a su renuncia, la señora Borrás se quejó del alegado hostigamiento por parte del Demandante ante el Sr. Celso Quiles, gerente de distrito de Fajardo.[42]

8. La señora Santiago y el señor Juan Iglesias se reunieron, en más de una ocasión con el demandante para investigar la conducta de éste.[43]

9. Triple-S invirtió tiempo, dinero y esfuerzo para investigar las violaciones de las normas y políticas de la compañía por parte del demandante.[44]

De conformidad con lo anterior, concluimos que la prueba presentada por ambas partes no nos permite acoger la vía sumaria. El material probatorio adjunto a la moción de sentencia sumaria y a la oposición devela controversias sustanciales sobre hechos esenciales en torno a la causa del despido del señor Acevedo Ríos. En particular, las declaraciones juradas y la deposición sometida denotan que hay factores de credibilidad que compete dilucidar ante el Tribunal de Primera Instancia, por lo que, no deben atenderse sumariamente. Entre estos asuntos, es necesario un dictamen del foro primario en torno

---

[35] *Íd.*, pág. 454.
[36] *Íd.*, pág. 491.
[37] *Íd.*, pág. 463.
[38] *Íd.*, pág. 463.
[39] *Íd.*, págs. 422-424.
[40] *Íd.*, pág. 423 y pág. 433, líneas 4-14.
[41] *Íd.*, págs. 425-426.
[42] *Íd.*, págs. 490-491.
[43] *Íd.*, pág. 441, líneas 2-8.
[44] *Íd.*, pág. 426.

a la razón específica por la cual fue despedido el Apelante, para que así pueda determinarse la gravedad de la faltas incurridas y si constituye o no causa para despido. En la Sentencia emitida lejos de esbozar una determinación de hecho específica sobre la razón del despido, se limita a hacer referencia al alegado acoso sexual y enfatizar en "bold" la palabra acoso sexual en la cita reglamentaria. Reiteramos que no hay determinación de hechos de la alegada actuación emitida por el foro primario. De igual forma, no consta en la carta de despido dirigida al señor Acevedo Ríos,[45] razón específica para el despido. Contrario a la gravedad de los hechos imputados, la Apelada reconoce en la aludida misiva que no actuó inmediatamente por razones estratégicas. Nos hace cuestionarnos como Curia lo siguiente: ante la alegada gravedad de las actuaciones del Apelante que ameritan el despido, ¿la Apelada decidió anteponer la seguridad de sus empleados por situaciones estratégicas? Por lo antes expuesto, colegimos que el presente caso no debió resolverse de forma sumaria.

En vista de tal contexto, regresamos el caso al foro primario para que se ordene la celebración de un juicio y se resuelva si la destitución del Apelante responde a causas justificadas según prescribe la Ley Núm. 80, *supra*. En virtud de este dictamen apelativo, procuramos que se atienda con el rigor que amerita las controversias principales de la reclamación laboral ante nos. Ello,

---

[45] *Íd.*, pág. 491. Conviene destacar que el último párrafo de la carta de despido dirigida al señor Acevedo Ríos lee de la siguiente forma:

> Esta acción suya violentó las políticas de la empresa y expuso a la organización a sendas reclamaciones por parte de la Sra. Borras, así como de otras empleadas bajo su supervisión que se sintieron desfavorecidas. **No se había actuado antes sobre su grave falta por razones estratégicas relacionadas a la potencial reclamación judicial de la Sra. Borras, pero ya agotado el plazo y analizada a fondo su reciente declaración sobre este asunto, concluimos que sería imprudente su continuidad en el empleo dada la gravedad de las faltas cometidas.** En consecuencia, le notificamos a usted su terminación de empleo efectivo hoy 13 de febrero de 2015.

a su vez, garantiza que ambas partes gocen del derecho a su día en corte y presenten la prueba pertinente a sus argumentos legales.

Por último, en los señalamientos de error segundo, tercero y cuarto, el Apelante sostiene que el foro *a quo* incidió en ciertos trámites relacionados con el descubrimiento de prueba. Al respecto, advertimos que dicho procedimiento concluyó el 28 de junio de 2024, según consta en la *Minuta* de la vista celebrada el 23 de abril de 2024, notificada el 2 de mayo de 2024.[46] En esta etapa tan adelantada de los procedimientos judiciales, no abordaremos estos señalamientos. Los argumentos levantados responden a asuntos vinculados con el manejo de caso, que merecen nuestra deferencia.

**IV.**

Por los fundamentos que anteceden, **revocamos** la *Sentencia* objeto de revisión judicial para la continuidad de los procedimientos de manera compatible con este dictamen apelativo.

Lo acordó y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[46] *Íd.*, pág. 196.